Grant E. **HAYES**, Appellant,

v.

**UNITED STATES** of America, Appellee (two cases).

Ronald J. **McDONALD**, Appellant,

v.

**UNITED STATES** of America, Appellee (two cases).

Nos. 5088–5091.

United States Court of Appeals Tenth Circuit.

Nov. 2, 1955.

Calvin L. Rampton, Salt Lake City, Utah (Zar E. Hayes, Salt Lake City, Utah, and William G. Mulligan, New York City, on the brief), for appellants.

C. Nelson Day, Asst. U. S. Atty., Salt Lake City, Utah (H. Brian Holland, Asst. Atty. Gen., Joseph M. Howard and Dickinson Thatcher, Attorneys, Department of Justice, Washington, D. C., and A. Pratt Kesler, U. S. Atty., Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS, Chief Judge, HUXMAN, Circuit Judge, and SAVAGE, District Judge.

HUXMAN, Circuit Judge.

In indictment Number 11–54 containing four counts appellant, Grant E. Hayes, was charged with federal income tax law violations. Count one charged him with filing a fraudulent income tax return for the fiscal year 1947. Counts two, three and four charged similar offenses for the years 1948, 1949 and 1950. All counts charged violations of Section 145(b), Title 26 U.S.C.A.

In indictment Number 12–54 containing four counts appellant, Ronald J. McDonald, was charged with income tax law violations similar to those charged in Number 11–54 against Hayes, for the years 1947, 1948, 1949 and 1950.

In indictment Number 13–54 appellants, Hayes and McDonald, were jointly charged with income tax law violations under the same statute. Count one charged them with filing false income tax returns for the Grant E. Hayes Corporation, of which they were officers, for the year 1947. Counts two, three and four charged similar violations for the years 1948, 1949 and 1950, respectively.

Trial was had to a jury. Appellants were found guilty on all eight counts. Sentences within the maximum permissible under the law were imposed, from which this appeal is prosecuted. Since the amount of the sentence is not in issue, the sentence need not, therefore, be set out. Eight grounds are urged for reversal, four of them relating to the admission or exclusion of evidence. The fifth relates to the instruction of the court with reference to character evidence. The sixth and seventh assignments urge that the evidence was insufficient to establish intent to defraud on the part of each appellant. In assignment number 8 it is contended that the court erred in refusing to give appellants requested instructions numbers 3, 5, 6 and 7, or the substance thereof.

The first assignment of error urges that the court erred in admitting Government's exhibit 22, which was the corporation's income tax return for the year 1950. It is contended that the admission of the original income tax return for the fiscal year 1950 was in direct violation of section 305 of the Act of January 3, 1951, 26 U.S.C.A. § 53 note, which provides that a corporation subject to the Act of January 3, 1951, shall file an amended income tax return and that such return shall be considered as the return of the corporation for such taxable year, with respect to the tax imposed by Chapter 1 of the Internal Revenue Code, that the return required thereby shall be the return for such taxable year for all tax purposes, and that no return for such taxable year with respect to any tax imposed by Chapter 1 of such Code filed on or before the effective date of the Act shall be considered for *any of such purposes* as the return for such year. Appellants thus argue that the original tax return, even though it may have been fraudulent, ceased to exist for all purposes and no criminal prosecution could be predicated thereon.

The purpose of section 305 of the Act of January 3, 1951, was to reinstate the excess profits tax which had expired on June 30, 1950, and make it retroactive as of that date. The Act required corporations with fiscal years ending between June 30, 1950, and December 31, 1950, to file an amended or additional return before March 15, 1951.

Section 305 of the Act of January 3, 1951, does not say, nor can it be implied from the language thereof, that a previously false return evaporates into thin air and ceases to exist for all purposes, and that no prosecution, even though such return was false and fraudulent, could thereafter be maintained. The language of the Act must be taken in context and must be considered in light of the purpose sought to be accomplished by the Act. The purpose of the Act was to retroactively reimpose an excess profits tax which had expired June 30, 1950. Obviously, an amended tax return was required for the purpose of computing the retroactively imposed excess profits tax. When filed, it became the only return for the computation of such tax and for that purpose the previous return ceased to exist. That we think is the express meaning of the language "no return for such taxable year, *with respect to any tax imposed by chapter 1 of such code*[1] (chapter 1 of this title) * * * shall be considered *for any of such purposes* as a return for such year." That is a far cry from saying that a tax return with respect to all income of the corporation other than that subject to excess profits taxes ceases to exist.

The offense of filing a fraudulent return for the purpose of evading income taxes is complete when the accused wilfully filed a false return,[2] and as stated, there is nothing in the Act of January 3, 1951, indicating that by the passage of that Act Congress intended to wipe out or forgive such offenses. Had

---

1. Emphasis supplied.

2. See United States v. Yeoman-Henderson, 7 Cir., 193 F.2d 867, and cases cited.

the original income tax return for the year 1950 not been admitted, the Government would have been unable to establish that a false and fraudulent return had been filed with respect to revenue not affected by section 305 of the Act of January 3, 1951. The original corporation income tax return for the year 1950 was properly admitted in evidence.

It is urged that the court erred in refusing to admit evidence showing payment of past due taxes as evidence of good faith in dealing with the Government. Appellants rely largely upon United States v. Matot, 2 Cir., 146 F.2d 197, and Heindel v. United States, 6 Cir., 150 F.2d 493, to sustain this contention.

■ Evidence of payment may be such that it merely shows a change of heart or an attempt to vitiate a crime. On the other hand, payment may be made or offered to be made under such circumstances as to warrant an inference of good faith and lack of evil intent. Such latter evidence is admissible in an income tax evasion case to support the contention that there was at no time any intent to evade payment of taxes. Whether such evidence is admissible depends upon the facts and circumstances of each case.

The facts in the Matot and Heindel cases, upon which appellants rely, distinguish them from this case. In the Matot case, Matot a former director of a bank and a depositor therein, had overdrawn his account and had outstanding no funds checks. When this was discovered, he was called before the bank officials and asked to make good the overdrafts. He was permitted to testify that he said he would do so immediately, but the trial court excluded evidence that at an interview with the president of the bank three or four days later he offered immediately to sell some of his real estate to liquidate the account, but was advised by the president not to sacrifice his real estate. In our view, the court on appeal rightly held that this evidence should have been admitted for whatever probative value it might have. The Heindel case involved income taxes; an erroneous income tax return was filed. As soon as the error was discovered and confirmed, the taxpayers promptly paid the additional tax. The court on appeal held that there were present circumstances which bore on the taxpayers' honest intent or lack of it and that the taxpayers were entitled to whatever favorable inferences might be drawn from their prompt payment when the error was called to their attention.

But the facts in this case are entirely different. Except for 1950, with respect to which appellants were required to file an amended return, no amended returns were filed for the remaining years in question, and the amended return for 1950 was filed one year late and then not until after the Bureau had requested that it be filed. Not until two and one-half years after the alleged fraud was called to appellants' attention did they offer to make even a partial payment to be held in suspension.

■ When acts of subsequent conduct are offered to prove absence of evil intent, the trial court is vested with considerable discretion in admitting or refusing to admit such evidence. At best, the offer to pay after the defalcation or fraud has been established has but small probative value for the purpose of showing lack of evil intent. The trial court must consider the circumstances surrounding the offer and its exclusion of such evidence does not constitute reversible error, unless under all the circumstances of the case it clearly should have been admitted. In United States v. Stoehr, 196 F.2d 276, 282, 33 A.L.R.2d 836, the Third Circuit held the trial court did not err in refusing to admit an offer of compromise, made fifteen months after the defendant learned of his false return.[3]

■ Here two and one-half years intervened before even a qualified offer of payment was made. Under these facts,

3. To the same effect see Bateman v. United States, 9 Cir., 212 F.2d 61.

we do not think the court erred in refusing to receive such evidence.

■ It is urged that the court erred in not allowing appellants to establish by cross-examination of the Government's witness, Pearce, that a check, exhibit 40, was actually reported as income by the corporation for the year 1951. Exhibit 40 was a check for $26,670.61 which was received by the corporation from the Studebaker Company. It was dated December 20, 1950, and was received by the Grant E. Hayes Company shortly thereafter. The witness, Pearce, testified on direct examination that it was not shown on the books of the company for the year 1950. He was then asked on cross-examination if the books did not show that it was reported for the year 1951. An objection to the question on the ground that it was immaterial was sustained. The following colloquy then occurred between court and counsel:

"The Court: Well, what do you claim, that you reported it later?"

"Mr. Rampton: I claim we reported it in the year in which we received it. They say it should have been reported in the previous year."

"The Court: Why don't you ask your own man about that?"

"Mr. Rampton: I think this man would know."

There is no evidence that this witness knew when the company received that check. That information was in the peculiar knowledge of the officers and employees of the company. We do not think the court erred in sustaining an objection to the question.

■ Exception is also taken to the court's ruling excluding defendants' exhibit N. This exhibit consists of a compilation of the working papers of the appellants' tax expert, Newman. Appellants contended that through their auditor they made these papers available to the Government. It is contended that making them available to the Government bears on the question of the intent of appellants. The papers were prepared long after the years in issue. It also appears that they were not made available until they were subpoenaed by the officers making the investigation of the taxes in issue. We think the trial court's ruling that they were inadmissible is correct.[4]

■ Not much need be said with regard to assignments 6 and 7. In them the appellants urge there was insufficient evidence of intent to defraud on the part of both appellants to submit the case to the jury. No attempt will be made to analyze the evidence to establish there was sufficient evidence to submit the case to the jury. We content ourselves with stating that there was an abundance of evidence to sustain the verdicts of the jury and the cases were, therefore, properly submitted to it for its consideration.

■ In assignment of error Number 8, it is urged the court erred in refusing to give appellants requested instructions Numbers 3, 5, 6 and 7. All of these instructions in one form or another advised the jury that intent to evade taxes is an essential element of the offense which must be established beyond a reasonable doubt. A casual reading of the court's instructions convinces us that it adequately advised the jury of that fact.

■ The most serious question arises with respect to the court's instructions as to evidence of good character.[5] The Supreme Court in the early

---

4. The trial court ruled they were inadmissible because they were prepared long after the years in question; that they were immaterial; that they were not the best evidence; that they were not a proper subject for expert testimony; and that they constituted an argument addressed to the court and jury.

5. The Court said to the jury:
  "Now ladies and gentlemen of the jury, there were some character witnesses who testified in this case. You will observe that those character witnesses didn't say a thing about the facts and circumstances of this case. All those character witnesses said was that they knew

case of Edgington v. United States, 164 U.S. 361, 17 S.Ct. 72, 74, 41 L.Ed. 467, established the elements of a correct instruction respecting good character evidence. The court there said: "* * * good character, when considered in connection with the other evidence in the case, may generate a reasonable doubt. The circumstances may be such that an established reputation for good character, if it is relevant to the issue, would alone create a reasonable doubt, although, without it, the other evidence would be convincing." And in speaking of such an instruction in Miller v. United States, 10 Cir., 120 F.2d 968, 971, we said: "The instruction is drawn too narrowly. It does not tell the jury that character testimony may be such that it alone may create a reasonable doubt, although without it the other evidence would be convincing." [6]

In its instruction, the court failed to tell the jury that character testimony may be such that it alone may create a reasonable doubt, although without it the other evidence might be convincing. We further feel that the court's instruction was erroneous when it stated that "You will observe that those character witnesses didn't say a thing about the facts and circumstances of this case" and "All those character witnesses said was that they knew the reputation of these defendants in the community in which each defendant lived * * *." And again, "* * * it is for you people to determine what weight you will give to it because those *witnesses didn't tell us a thing about what happened and under what circumstances it happened in this case.*"[7] Of course, these character witnesses did not tell a thing about the facts of the case or what happened and under what circumstances it happened. They were not supposed to and would not have been permitted as character witnesses to testify as to the facts of the transaction. The competency or the weight of character testimony does not depend upon knowledge of facts in the case. Knowledge or lack of knowledge of such facts is no element of character testimony. A witness' knowledge of an accused's character is based upon hearsay. He gets his knowledge from what he hears people living with the accused say about him. The weight to be accorded to such testimony is enhanced by the length of time the witness has known of the accused's reputation in the community and the universality of the appraisal of his character by his associates.

Not only did appellants object to the court's instruction with regard to character testimony but they further tendered a proper instruction. We feel that the erroneous instruction pertaining to character witnesses is substantial and requires a reversal of the judgment.

The judgment is, therefore, reversed and the cause is remanded for a new trial.

---

the reputation of these defendants in the community in which each defendant lived as to the truth and veracity or *honest* and integrity, or words to that general effect. Now I charge you that character evidence may be considered by you along with all of the other evidence in the case in deciding whether to return your verdict of guilty or not guilty. Now the purpose of character evidence is primarily this: That if a fellow has a good reputation, it is reasonable to infer he will act honestly and truthfully. It is for you to determine, taking that testimony under account with all of the rest, whether these people in fact acted honestly and truthfully. You may consider that

evidence along with the rest of it, but in the final analysis, it is for you people to determine what weight you will give to it because those witnesses didn't tell us a thing about what happened; and under what circumstances it happened in this case."

6. For similar decisions see Michelson v. United States, 1948, 335 U.S. 469, 69 S. Ct. 213, 93 L.Ed. 168; United States v. Donnelly, 7 Cir., 1950, 179 F.2d 227; Villaroman v. United States, 87 U.S.App. D.C. 240, 184 F.2d 261, 21 A.L.R.2d 1074; United States v. Klass, 3 Cir., 1948, 166 F.2d 373.

7. Emphasis supplied.