C. George SWALLOW, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 6859.

United States Court of Appeals
Tenth Circuit.

July 11, 1962.

Rehearing Denied Aug. 28, 1962.

Karl W. Farr, Jr., Denver, Colo., for appellant.

Norman Sepenuk, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Joseph M. Howard, Atty., Dept. of Justice, and Lawrence M. Henry, U. S. Atty., were with him on the brief), for appellee.

Before MURRAH, Chief Judge, and BREITENSTEIN and HILL, Circuit Judges.

HILL, Circuit Judge.

The appellant, C. George Swallow, was indicted, tried and convicted on two counts of wilfully attempting to evade his income tax for the years 1953 and 1954, by filing false and fraudulent income tax returns.[1]

Swallow and one Hershfield, early in 1953, organized the Industrial Gas Company, formed to develop oil and gas properties. Each became an officer of the company and it was agreed each would draw a salary from the company of $1000 per month. Industrial soon commenced business operations and derived its income mostly from the shipment of natural gas through leased pipelines to customers in South Dakota. A bank account was opened with appellant and Hershfield authorized to jointly draw corporate checks upon the same. Hershfield resigned as President in August, 1953, and sold his stock to Charles W. Swift who became President in September, 1953. During August, 1953, another corporate bank account was opened by appellant at the First National Bank of Denver and, after Hershfield resigned, Swallow alone had authority to draw checks upon this corporate account.

By the government's evidence it sought to prove that all of the items of alleged unreported income, except one, came from this corporate bank account. The government's case was presented on the "specific items" theory, which simply means the proof of specific items of income which the government contends were omitted from the return. The theory is certainly not a complicated one, and by its use, the government proceeded to prove, by both direct and circumstantial evidence, each separate item of alleged unreported income relied upon to make the case.

For the taxing year, 1953, the evidence reflected generally three categories of unreported income. The largest single item involved the purchase and sale of a 7½% interest in Ore Conversion Company by Swallow, showing a profit to him by such transaction in the amount of $4900. The second category covers three amounts paid directly by the corporation but for the benefit of Swallow. These included $152.90 to Hobson Motor Company for repairs to his automobile, $375.00 to Dr. Levy for rental of the residential property where Swallow lived and $145.00 to Public Storage and Fixture Company for rugs and beds. The third category covered the amount of $5,362.03, diverted from the corporation during the taxable year by checks payable to Mrs. Swallow, with such funds being thereafter used to pay the Swallow family's personal expenses. The total of the three categories was $10,934.93.

The evidence concerning unreported income for 1954 showed a similar pattern of use of funds. A payment of $345.05 to a men's clothing store out of corporate funds; a check from the corporation to Mrs. Swallow for $1,000, charged as back salary due appellant; the payment of principal and interest on a promissory note in the total amount of $5622.25 by the corporation to appellant's wife, which note the government contended was fictitious and did not represent a bona fide loan from the wife to the corporation; and again numerous instances during that year of payments of corporate funds to Mrs. Swallow's bank account and the use thereafter of such money to the family's personal expenses. The government's evidence on this count showed unreported income totaling $15,002.78.

As defenses to the prosecution, Swallow first denied he had not reported all

1. Count 1, covering 1953, charged a violation of Internal Revenue Code of 1939, 26 U.S.C.A. § 145(b); Count 2, covering 1954, charged a violation of Internal Revenue Code of 1954, 26 U.S.C.A. § 7201.

of his income, and further affirmatively contended: That he did not report all of his allowable deductions; that Industrial funds paid for his personal benefit were in fact repayments of loans or reimbursements for money he had paid out for the benefit of the corporation; and that he relied in good faith upon the accountants who prepared his income tax returns.

 The major portion of appellant's brief concerns the sufficiency of the evidence to support the verdict of guilty. In our determination of this question, the evidence and inferences to be drawn therefrom must be viewed in the light most favorable to the prosecution.[2] It is also elementary that circumstantial evidence, upon which reasonable inferences can be based, is sufficient.[3] Although each count of the indictment shows the specific amount of unreported income as contended by the government, it is not necessary for it to prove the exact amount of unreported income, but it is sufficient if the evidence shows the unreported income to be in a substantial amount.[4]

 As the court below advised the jury "the gist of both offenses charged in the indictment is a wilful attempt on the part of the defendant to evade or defeat a tax imposed by the income tax law." The offense is complete when the taxpayer files a false and fraudulent return with intent to evade or defeat any part of the tax due.[5] A wilful intent to evade or defeat tax liability may be inferred from the conduct of the taxpayer.[6]

 The record shows that counsel for the government was meticulous in his presentation of the case. The evidence was adduced in an orderly fashion and covered well every single item of alleged unreported income. In addition, several witnesses testified to statements, made by Swallow, clearly indicating his intention to evade income taxes and directly proving wilful intent. A detailed discussion of that evidence here, which we have carefully reviewed, would serve only to unnecessarily extend the length of this opinion. We so conclude because of the overwhelming nature of the proof by both direct and circumstantial evidence. Over forty witnesses testified on behalf of the prosecution and nearly one hundred exhibits were offered and admitted through these witnesses. It is true, the defendant, by his own testimony, attempted to refute what these witnesses said, and further to explain many of the transactions involved and sustain his good faith reliance upon those who prepared the questioned returns. But viewing the record as a whole, we must conclude that the evidence adduced by both sides presented questions of fact including the guilt or innocence of the defendant. The trial court correctly overruled the defendant's motion for

2. Sandoval v. United States, 10 Cir., 285 F.2d 605; Corbin v. United States, 10 Cir., 253 F.2d 646; Evans v. United States, 10 Cir., 240 F.2d 695; Canton v. United States, 8 Cir., 226 F.2d 313, cert. denied, 350 U.S. 965, 76 S.Ct. 433, 100 L.Ed. 838.

3. Evans v. United States, supra.

4. Fischer v. United States, 10 Cir., 212 F.2d 441; Rose v. United States, 10 Cir., 128 F.2d 622, cert. denied 317 U.S. 651, 63 S.Ct. 47, 87 L.Ed. 524.

5. Hayes v. United States, 10 Cir., 227 F.2d 540; United States v. Croessant, 3 Cir., 178 F.2d 96, cert. denied, 339 U.S. 927, 70 S.Ct. 626, 94 L.Ed. 1348; Willingham v. United States, 5 Cir., 289 F.2d 283, cert. denied, 368 U.S. 828, 82 S.Ct. 49, 7 L.Ed.2d 31; Myres v. United States, 8 Cir., 174 F.2d 329, cert. denied, 338 U.S. 849, 70 S.Ct. 91, 94 L. Ed. 520; Cave v. United States, 8 Cir., 159 F.2d 464, cert. denied, 331 U.S. 847, 67 S.Ct. 1732, 91 L.Ed. 1856.

6. Hooper v. United States, 10 Cir., 216 F.2d 684; Graves v. United States, 10 Cir., 191 F.2d 579; Gaunt v. United States, 1 Cir., 184 F.2d 284, cert. denied, 340 U.S. 917, 71 S.Ct. 350, 95 L.Ed. 662; Battjes v. United States, 6 Cir., 172 F.2d 1; United States v. Rosenblum, 7 Cir., 176 F.2d 321, cert. denied, 338 U.S. 893, 70 S.Ct. 239, 94 L.Ed. 548; Norwitt v. United States, 9 Cir., 195 F.2d 127, cert. denied, 344 U.S. 817, 73 S.Ct. 11, 97 L.Ed. 635.

judgment of acquittal and left the determination of those facts to the jury.[7]

■ Error is urged because of the use of summaries by the government, at the conclusion of its evidence, to present to the jury its interpretation of the evidence. These summaries, government's exhibits 108 through 114, were admitted by the court, without objection by defendant's counsel as to their use, but without admitting their correctness and after a thorough cross-examination thereon. Upon admission of these exhibits, the trial judge carefully advised the jury concerning the purpose of such admission, and again, by a separate instruction at the conclusion of the case, correctly instructed concerning their nature and use.[8] The use of summaries in cases involving complicated documentary proof has been approved in numerous cases by this court,[9] as well as other appellate courts.[10] Their use in this case was appropriate.

■ Appellant points error in the acceptance by the court of a juror named Lewis, and the court's refusal, after trial, to conduct a proceeding concerning this juror's qualifications and for the correction of the reporter's record concerning the voir dire examination of this juror.

Little need be said on this point. The trial judge, on the voir dire examination, read to the prospective jurors the names of the witnesses both sides expected to use in the trial, and inquired whether any of them were acquainted with any of the probable witnesses. Lewis requested additional information about a witness named Brakhage and then stated that he was casually acquainted with him. After trial, an affidavit was procured from Lewis about the matter, and filed. The affidavit is not inconsistent with what Lewis told the trial judge upon the voir dire examination and contains nothing to justify the court in holding a hearing as requested. Furthermore, while Brakhage was listed as a proposed witness for the defendant, he did not appear in the trial.

■ Counsel for appellant seeks to apply the so-called "lead rule" to this case.[11] He cites no authorities in support of this contention. Our own research on this point shows such rule to have been applied only in "net worth" cases and never in a "specific item" case. The reasons for its application in a "net worth" case certainly are not present in a "specific item" case.[12] The contention must be rejected.[13]

7. Mighell v. United States, 10 Cir., 233 F.2d 731, cert. denied, 352 U.S. 832, 77 S.Ct. 47, 1 L.Ed.2d 52; Hayes v. United States, 10 Cir., 227 F.2d 540; Burke v. United States, 1 Cir., 293 F.2d 398, cert. denied, 368 U.S. 930, 82 S.Ct. 367, 7 L.Ed.2d 193.

8. "There have been admitted in evidence certain exhibits variously referred to as schedules or summaries. Strictly speaking these exhibits are not actual evidence, but they were admitted as summaries of other evidence in the case and they were admitted only for your assistance and convenience in considering the other evidence which they purported to summarize. Exhibits of this nature are permitted where they are based upon voluminous books, records, or documents already in evidence, in order to assist you in determining the ultimate facts or results shown by such books, records or documents. But you are reminded that it is the books, records, and documents, which are the evidence, and the summaries are admitted only to assist you in considering that evidence. For that purpose, you are entitled to consider them."

9. Greer v. United States, 10 Cir., 227 F.2d 546; Deschenes v. United States, 10 Cir., 224 F.2d 688; Graves v. United States, 10 Cir., 191 F.2d 579; Carlson v. United States, 10 Cir., 187 F.2d 366, cert. denied, 341 U.S. 940, 71 S.Ct. 1000, 95 L.Ed. 1367.

10. United States v. Kelley, 2 Cir., 105 F.2d 912, 918; Turner v. United States, 4 Cir., 222 F.2d 926, 933, cert. denied, 350 U.S. 831, 76 S.Ct. 65, 100 L.Ed. 742.

11. Holland v. United States, 10 Cir., 209 F.2d 516, aff'd, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150.

12. These reasons are well set forth in Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150.

13. In Zacher v. United States, 8 Cir., 227 F.2d 219, cert. denied, 350 U.S. 993, 76 S.Ct. 542, 100 L.Ed. 858, the court refused

Swallow also raises the question of possible jury prejudice because of a newspaper article appearing in the Denver Post during the trial. One of the government witnesses, who had denied, at his first appearance as a witness, that the defendant had talked with him about his testimony, later took the stand again and changed his testimony in this regard. Upon his recall, he stated Swallow had come to his hotel room and stated, "I got a proposition for you, if you go along with this, make things pretty easy for you. Might get some of your money back." The witness further testified, "Well, anyway he wanted me to testify in their favor" and then he said, "We will make it right with me." The questioned news item reported this as an apparent bribery attempt. Counsel for appellant raised no question about the article until upon his Motion For New Trial. The trial judge completely answered this contention upon his denial of a new trial.[14] We are in agreement with the trial judge's statement and must reject appellant's claim of prejudice on this point.

Swallow makes several other contentions here, some of which overlap the points we have covered and the others are so lacking in merit to not warrant discussion. Therefore, we conclude from our careful examination of the record before us that appellant received a fair trial at the hands of the court and jury and nothing of a prejudicial nature appears in the record.

The judgment of conviction is affirmed.

---

to apply the "lead rule" in an analogous case involving a prosecution on the theory of specific overstatements of deductions particularly where an extensive investigation of the taxpayer's affairs was made.

14. "As to the newspaper article, the Court is satisfied that even if the articles were read by one or more of the jurors, that would not result in any prejudice to the defendant, because this matter which was quoted in the newspaper article—'Apparent Bribery Attempt'—was in essence the testimony of one of the witnesses in the case. In other words, the matter

which lead to the article was explored in this court. My recollection is that both the defendant as well as, I believe, the witness Swift, was testifying as to what took place. However, in addition to that, this Court does not take the position that jurors violate the instructions of the Court—and this Court very carefully, and I believe the record will show, if not at every recess, certainly at most recesses, this Court specifically instructed the jury that they were not to read or listen to or view any news reports, should there be any such concerning this case—the Court cannot presume that the jurors violated this instruction."