Charles L. **WALL** and Howard L. Lund, Appellants,

v.

**UNITED STATES of America,** Appellee.

Nos. 9007, 9008.

United States Court of Appeals Tenth Circuit.

Nov. 1, 1967.

---

Norman Wade, Salt Lake City, Utah (Gary W. East, Salt Lake City, Utah, on the brief), for appellants.

Donald J. Stocking, Denver, Colo., and Arthur F. Mathews, Washington, D. C., Attys. for Securities and Exchange Commission (William T. Thurman, U. S. Atty., and William P. Sullivan and Ralph H. Erickson, Attys., Securities and Exchange Commission, of counsel, on the brief), for appellee.

Before WILBUR K. MILLER *, BREITENSTEIN and SETH, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The appellants were jointly indicted and tried for fraud in the sale of securities, 15 U.S.C. § 77q(a), for fraud in the use of the mails, 18 U.S.C. § 1341, and for conspiracy, 18 U.S.C. § 371. They appeal from the judgments entered after jury verdicts finding each guilty.

The charges arose from the operation of Guaranty Trust Deed Corporation (Guaranty) which was organized under the laws of Utah. At various pertinent times, defendant Lund, an attorney,

* Of the District of Columbia Circuit, sitting by designation.

served as president, chairman of the board, and director of the company while Wall, an accountant, was treasurer, president, and director. Guaranty made a declaration of trust whereby it became obligated to hold funds in trust for public investors in Guaranty Sevenplan Trust Fund (Sevenplan). The Utah Securities Commission on April 1, 1960, approved the public sale of Sevenplan certificates in the amount of $1,000,000. This limit was later raised to $3,000,000. The net public investment in Sevenplan was about $2,900,000. On July 3, 1962, the State Securities Commission cancelled the license to sell investment certificates to the public. Subsequently, Guaranty was declared bankrupt.

The essence of the plan of operation was that the proceeds from the sale of certificates would be used for the purchase at a discount of trust deeds, mortgages, and like commercial paper. Guaranty would buy the paper, hold it in trust, make the collections, and pay the investors 7% interest. Expenses and profit to Guaranty would come from the excess of collections over the amounts necessary to pay the 7% interest.

Appellants urge that their motions for acquittal should have been granted because of the insufficiency of the evidence to show an intent to defraud. The essence of their argument is that they, in good faith, engaged in a legitimate business venture. The use of the mail is not questioned.

Among the representations made by Guaranty in prospectus and sales literature were these. An investor gets a 100% secured investment in title insured real estate and is guaranteed 7% interest. Guaranty deals in high-grade, non-speculative real property deeds of trust, mortgages and contracts of sale. Each property securing a note purchased by Guaranty is carefully screened and appraised and covered by title and fire insurance. No more than 10% of the purchases by Guaranty may be of securities which do not require monthly amortization.

After many of the transactions shown by the record had occurred, Guaranty filed a second prospectus repeating the representations made in the first prospectus with the exception that the assertion that 10% of the paper would require monthly amortization was changed to read that "normally" 10% would be of such character.

The record shows that Lund, with the aid of an advertising agency, initiated an intensive, and surprisingly successful, sales campaign. Wall, who had full knowledge of that campaign, set up the accounts and records. A law student was employed part time to keep the books. The funds of Guaranty and Sevenplan were commingled. Lund was requested to resign as president after he was charged in a civil suit with fraudulent representations. He remained as chairman of the board. Wall was later made president.

No good purpose would be served by detailing the many transactions presented by the government. Among other things they showed self-dealing, the use of straw men to create paper, the loan of money on other than real property security, speculative investments of a high risk nature, loans made without appraisals or title insurance, purchases of paper providing for balloon rather than amortization payments, participation in "check exchange" operations, insufficient documentation of investments, and reckless dealings with real estate and other speculators. On many of these ill-advised transactions the checks disbursing trust funds were signed by both of the appellants. They were primarily concerned with the sale of trust fund certificates to the public; and, at the very least, had no compunction in using the money contrary to the representations made to the investors.

 The question of whether the appellants were engaged in a scheme to defraud or in a legitimate but unsuccessful business venture was a question of

fact for jury determination.[1] We have repeatedly said that "in appraising the sufficiency of the evidence to justify an inference of fraudulent intent and bad purpose, we must, of course, view the evidence in its most favorable light to the government."[2] Intent may be inferred from the conduct of the defendants, and circumstantial evidence, upon which reasonable inferences may be based, is sufficient.[3] The record shows that each of the appellants participated in a plan to extract money from the public by means of specific representations and then used that money with heedless and reckless indifference to those representations. This is enough to justify a reasonable inference of an intent to defraud.

■■ The appellants argue that the inference of good faith is just as reasonable as the inference of an intent to defraud and say that to permit the jury to choose between two reasonable inferences is to destroy the presumption of innocence. The argument is specious. In deciding a motion for acquittal the trial judge determines whether, considering the evidence in the light most favorable to the government, there is substantial evidence from which a jury might reasonably find that an accused is guilty beyond a reasonable doubt.[4] This rule does not encroach on the presumption of innocence. It recognizes the procedure by which the presumption may be overcome.[5]

■■ The transactions upon which the government relied were proved by direct evidence. The presence or absence of fraud had to be inferred from the facts so established. Appellants say that in this situation the rule applies that when the evidence is circumstantial it must exclude every reasonable hypothesis other than that of guilt, and the jury must be so instructed. This principle had some judicial support before the decision of the Supreme Court in Holland v. United States, 348 U.S. 121, 139–140, 75 S.Ct. 127, 137, 99 L.Ed. 150. The Court there said, "the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect." Here, the trial court gave a proper and adequate instruction on reasonable doubt.

■ The occurrence of the transactions covered by the government evidence is not contested. The appellants knowingly participated in them with knowledge of the plan and method of operation of both Guaranty and Sevenplan. They acted in concert to carry out the plan. Their defense of good faith was correctly submitted to the jury, and it found against them. The appellants say that the jury could not have considered the evidence, and particularly their defense, because it took but one hour of deliberations to reach a verdict in a case which had taken eight days of trial. We know of no rule which requires a jury to deliberate for any particular period of time. From our study of the record we can well understand why the jury took no longer in coming to a decision. Its verdict must stand.

Section 310, 5 U.S.C., relates to the authority required to conduct a legal proceeding on behalf of the United States.[6] Those authorized to do so in-

1. Beck v. United States, 10 Cir., 305 F. 2d 595, 598, cert. denied 371 U.S. 890, 83 S.Ct. 186, 9 L.Ed.2d 123, cert. denied sub nom. Tuthill v. United States, 371 U.S. 895, 83 S.Ct. 195, 9 L.Ed.2d 128.

2. Elbel v. United States, 10 Cir., 364 F.2d 127, 131–132, cert. denied 385 U.S. 1014, 87 S.Ct. 726, 17 L.Ed.2d 550.

3. Swallow v. United States, 10 Cir., 307 F.2d 81, 83, cert. denied 371 U.S. 950, 83 S.Ct. 504, 9 L.Ed.2d 499.

4. Cartwright v. United States, 10 Cir., 335 F.2d 919, 921.

5. See Curley v. United States, 81 U.S. App.D.C. 389, 160 F.2d 229, 233, cert. denied 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850.

6. The statute reads: "The Attorney General or any officer of the Department of Justice, or any attorney or counselor specially appointed by the Attorney General under any provision of law, may,

clude the Attorney General, an officer of the Department of Justice, and "any attorney or counselor specially appointed by the Attorney General under any provision of law." [7] On the trial of this case, Ralph H. Erickson, an attorney with the Securities and Exchange Commission, participated in the examination of witnesses and the presentation of arguments. He had no special appointment by the Attorney General.[8]

The statute is for the protection and benefit of the government to prevent the assertion of unauthorized claims.[9] We see no jurisdictional problem. The proceedings were initiated by, and the trial was under the control of, the United States Attorney. At the pre-trial conference the United States Attorney moved that Mr. Erickson be permitted to participate in the trial and the defense did not object. On the third day of the trial when Mr. Erickson was examining his second witness, defense counsel objected for the first time to his participation. In the circumstances strict compliance with § 310 was waived.[10] Counsel may not lie back in wait when it is their duty to speak up if they wish to object. Nothing in the activities of Mr. Erickson improperly prejudiced the appellants. Decisions concerned with participation in grand jury proceedings by unauthorized persons [11] are not applicable.

A scatter-gun attack of the appellants relates to the approximately 300 exhibits received in evidence. The record belies their claim that they were not afforded adequate opportunity to object on the ground of relevancy. The claim that the court erroneously denied a motion, made at the conclusion of the evidence, to strike certain exhibits merits no consideration because neither in the trial court nor here have counsel pointed out with any particularity any reason why any particular exhibit was objectionable or how appellants were improperly prejudiced by its admission.

Appellants complain that it was error for the trial court to permit the indictment and exhibits to be taken into the jury room. This was a matter which rested in the sound discretion of the trial court.[12] That discretion was properly exercised.

The last claim of error concerns the contention that, as shown by the record, the board of directors of Guaranty either approved or ratified the acts of appellants. A Utah statute [13] charges every member of a corporate board of directors with constructive knowledge of the acts and omissions of other directors. Appellants contend that the jury should have been instructed regarding the responsibility of the unindicted directors. No such instruction was requested. In the ab-

---

when thereunto specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States attorneys may be by law authorized to conduct, whether or not he or they be residents of the district in which such proceeding is brought." This statute was repealed after the trial in the instant case, 80 Stat. 640, and reenacted without significant change as 28 U.S.C. § 515, 80 Stat. 613.

7. 28 U.S.C. § 503, as amended, 28 U.S.C. § 543(a), 80 Stat. 618 authorizes the Attorney General to appoint counsel to assist district attorneys.

8. This appeal was argued by two attorneys for the Securities and Exchange Commis-

sion, each of whom were specially appointed by the Attorney General.

9. See United States v. Crosthwaite, 168 U.S. 375, 379, 18 S.Ct. 107, 42 L.Ed. 507; United States v. Denton, 6 Cir., 307 F. 2d 336, 338, cert. denied 371 U.S. 923, 83 S.Ct. 292, 9 L.Ed.2d 232; and Shushan v. United States, 5 Cir., 117 F.2d 110, 114, cert. denied 313 U.S. 574, 61 S.Ct. 1085, 85 L.Ed. 1531.

10. Home News Publishing Company v. United States, 5 Cir., 329 F.2d 191, 193.

11. For example, May v. United States, 8 Cir., 236 F. 495.

12. Little v. United States, 10 Cir., 73 F. 2d 861, 864.

13. U.C.A.1953, § 76–13–8.

sence of compliance with Rule 30, F.R.Crim.P., no question relating to the instructions is preserved for appellate review unless the record shows plain error affecting substantial rights which must be preserved to prevent a miscarriage of justice.[14] A defendant cannot defeat an indictment by urging that another, but unindicted person, committed the same offense. The proof of approval or ratification can go only to intent, and that question was resolved by the jury under adequate instructions. We are convinced that there was no miscarriage of justice in this case.

The judgments are severally affirmed.

14. Burns v. United States, 10 Cir., 286 F.2d 152, 157.