**J. D. McCARTY, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 9986.**

United States Court of Appeals
Tenth Circuit.

April 7, 1969.

Rehearing Denied June 5, 1969.

John C. Moran, Oklahoma City, Okl. (James W. Bill Berry, Oklahoma City, Okl., with him on the brief), for appellant.

Willard C. McBride, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen. of the United States, and Joseph M. Howard and Richard B. Buhrman, Attys., Dept. of Justice), for appellee.

Before MURRAH, Chief Judge, SETH, Circuit Judge, and CHRISTENSEN, District Judge.

CHRISTENSEN, District Judge.

Appellant was indicted on three counts charging willful attempts to evade his income taxes for 1960, 1961, and 1962 by filing false and fraudulent returns in violation of Section 7201 of the Internal Revenue Code of 1954, 26 U.S.C. § 7201, and on three counts charging the willful subscribing of returns for those years which he did not believe to be true, in violation of Section 7206(1) of the Code,

26 U.S.C. § 7206(1). The jury acquitted on all counts relating to the years 1960 and 1961, but found him guilty on the 1962 charges. In this appeal from the trial court's judgment of conviction and sentence appellant claims that the evidence was insufficient to justify the verdict, that the trial court erred in receiving summary exhibits and that the instructions to the jury were deficient or erroneous.

A reading of the record is convincing that the evidence supports the verdict and that it was not error for the trial court to deny appellant's motion for judgment of acquittal.

While smaller, though substantial, disparities were indicated by the evidence for the prior years, the government's net worth proof for the year 1962 tended to show that the appellant had received $34,114.59 in taxable income and had reported $13,427.33, leaving an unreported deficiency of $20,687.26. The reconstructed 1962 income tax was $11,626.50, as compared with $3,317.39 submitted on his return. The specific item proof served to confirm substantially these figures. The government's proof of specific items indicated that there was $22,038.22 of unreported income for 1962. Indeed, the appellant's experts did not question that by both the net worth and specific item proof failure to report substantial income was shown.[1]

■ Appellant does not question substantial deficiencies so much as proof of willfulness. He relies on the established rule that willfulness cannot be inferred from a mere understatement of income, and that proof of specific intent to evade known tax liability is essential to a felony conviction. Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943). It is argued that appellant's books and records appeared correct on their face, that "his bank deposits in fact disclosed the proved deficiency", and that absence from his office and the inexperience of his clerical help are consistent with innocent mistake or omission.[2]

We think that there were proved circumstances beyond mere unreported tax liability from which the jury reasonably could have found that the understatement for 1962 was willful.

The government specifically proved that in 1962 the appellant received twelve monthly checks, each in the amount of $1,000, from the Oklahoma City Chamber of Commerce as fees for services rendered, none of which was reported in his return either as to amount or source. These specific items alone were within $2,000 of the total taxable income he reported for the year. In addition, the government proved by direct evidence that appellant had received in 1962 $10,038.22 of unreported income from

---

1. One of appellant's witnesses testified with reference to his checking of government's figures: " * * * For the year 1962, we show corrected taxable income of $28,723.29. The taxable income per the return was $13,427.33. This is in comparison with an under-reporting of insurance commissions and Chamber of Commerce Fees in the amount of $22,038.22. Now frankly, as to what precisely makes up that $7,000 difference, I cannot say. * * * If there had not been the deposits of income, if there had been no records, then it's true the Government would have had to gone [sic], possibly, to the net worth method. Here there were records. There is an understatement by the records of $22,000 in the year 1962, and there is an additional taxable income on which the income tax has not been paid."

2. Quoting from Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954): " * * * When there are no books and records, willfulness may be inferred by the jury from that fact coupled with proof of an understatement of income. But when the Government uses the net worth method, and the books and records of the taxpayer appear correct on their face, an inference of willfulness from net worth increases alone might be unjustified, especially where the circumstances surrounding the deficiency are as consistent with innocent mistake as with willful violation. On the other hand, the very failure of the books to disclose a proved deficiency might indicate deliberate falsification." Id. at 128, 75 S.Ct. at 132.

insurance commissions and counseling.[3] The very fact that the deposit tickets, notwithstanding the absence of an indication of specific source, were readily available and were not misplaced or incorrectly noted by clerical personnel, could support rather than detract from proof of willfulness. The accountant who prepared his 1962 return did not examine any of the basic records but relied upon the information furnished him orally and in writing by appellant. Appellant indicated to the agents that he accumulated his income figures for tax purposes by examining his bank deposits with his secretary. The omission of every one of twelve monthly payments totaling $12,000 would render an inference of willfulness not unreasonable in view of all of the evidence. There was evidence tending to show that during the year appellant purchased and paid for about $22,000 worth of securities, deposited $1,500 in a savings account and made personal expenditures of about $10,000, which was another indication from which the jury could have inferred that he knew that he was making substantially more than the $13,427.33 reported on his 1962 return.

We cannot accept the argument that beyond the willfulness to be inferred from this record some express evidence of "fraud" or evil intent, such as the willful falsification of records apart from the return in question, was indispensable to any conviction. Notwithstanding various means of proof, the gist of the charges was willfulness in making a false return, not fraud or deceit in an abstract sense or in different context. We conclude that the question of willfulness was for the jury.[4]

The appellant's contention that the government improperly used "false testimony" and summary exhibits incorporat-

ing that testimony to convict him arises in view of evidence tending to prove: In 1961, a bill was pending before the Oklahoma House of Representatives to legalize pari-mutuel betting on horse races. Appellant was then Speaker of the House of Representatives. There was a group interested in seeing that this bill was passed with a view to managing a race track in Oklahoma. Among them were Dillon, Wallace and Barron. They talked at Albuquerque, New Mexico, of obtaining a license and of "publicity and whatever it might take to get the race track going" in Oklahoma City. For the purpose of advancing the project Wallace obtained a cashier's check for $5,000 payable to Oklahoma City; but when Barron said this check wasn't any good to him because cash was necessary, the check was converted into currency and the currency, according to Wallace and Dillon, delivered as such to Barron pending the latter's trip to Oklahoma City. Barron testified that he did not receive currency as such but a "bulky envelope" from either Wallace or Dillon. He said he did not definitely know that this envelope contained currency and was precluded by defendant's objection from testifying what "it was alleged to contain". Barron traveled to Oklahoma City within a few days, had a conference concerning the race track project with others there and then visited appellant at the State Capitol where in the course of a conversation concerning the pending bill he handed the envelope to appellant who put it in a drawer of his desk. Following their initial introduction and before the delivery of the envelope appellant volunteered that he understood Barron was with a group that was interested in the racing picture and said that the chances of the bill's passing looked favorable. Barron further tes-

3. We are not unmindful of appellant's claim that there was confusion incident to the reporting of insurance income on an accrual basis following the incorporation of his insurance business in the latter part of 1962; but if this affected his action it would be reasonable to infer that any variance of understanding could not have explained the major discrepancies.

4. Swallow v. United States, 307 F.2d 81 (10th Cir. 1962); Windisch v. United States, 295 F.2d 531 (5th Cir. 1961); Palermo v. United States, 254 F.2d 130 (9th Cir. 1958).

tified that when he handed appellant the envelope nothing was said about it by either one of them but that appellant put the envelope in a drawer of his desk. There was testimony from a fellow legislator that subsequently he was asked by appellant not to take the floor in opposition to the bill but to let the sponsor make a good show and that the bill was not going to pass anyway. The appellant testifying in his own behalf denied positively that he had received any envelope or money from Barron and testified that he had no recollection of ever having met him, although as to the latter he "could be in error".

Appellant did not object in the first instance to the admission of the circumstantial evidence now in question, but before the government had rested unsuccessfully moved generally to strike the testimony of three of the four witnesses called by the government on the subject, objected to the "conclusions" of the government expert in identifying the $5,000 item in the summary exhibits covering the year 1961 offered in evidence by the government, and objected to the admission of the summaries themselves by reason of the inclusion of that item. While only the rulings denying the last two objections have been argued on this appeal, all were presented to the trial court on the theory that the government's related proof was speculative and conjectural and did not sufficiently tend to establish the receipt by the appellant of the $5,000 included in the government's summary.

The trial court instructed the jury concerning the function of summary exhibits, including a reminder "that it is the books, the records, the testimony and the documents which are in evidence and the summaries are admitted only to assist you in considering that evidence for that purpose, and you are entitled to consider them." [5] No exception was taken to this instruction and its sufficiency is not attacked here. The appellant having denied receiving any envelope or any money from Barron, the $5,000 item was omitted from the summary presented by his expert. We are really concerned not so much with the summaries as with the evidence on which they were based.

The problems presented to the trial court during the taking of evidence concerned admissibility. At the close of the evidence it was not called upon nicely to weigh the sufficiency of the circumstances to warrant an inference that $5,000 was received by appellant; appellant's motion for acquittal at the close of all of the evidence was made in general and no motion to strike was then interposed.

In the practicalities of a trial, the fragmenting of attacks upon circumstantial evidence usually is not feasible; and a trial court in determining sequential admissibility of the parts may not be held strictly accountable for final evaluation in advance of the developing whole.[6] We cannot say on this record that the rulings of the trial court were erroneous, nor do we think that any prejudice is indicated since appellant was acquitted

5. Apparently this and the language preceding it was patterned after an instruction considered proper in Swallow v. United States, 307 F.2d 81 (10th Cir. 1962). *See also* Conford v. United States, 336 F.2d 285 (10th Cir. 1964). The difference in the construction and punctuation of the phrase last quoted, possibly the reporter's inadvertence, is not considered critical. When the government moved to strike some of the appellant's summary exhibits because of errors discovered after their admission, his counsel approvingly referred to the court's proposed instructions: "Your Honor, you cover it in your instructions. You tell

them that these summaries are not evidence in the case * * *" The government's motion on counsel's statement was denied.

6. As Professor Wigmore has put it: "The second condition peculiar to litigious proof is that the question with which the law of Evidence in the strict sense has to do (that is the rules regulating the production of evidence by opposing parties) is one of Admissibility, not of Demonstration or Proof * * * whether a particular fact is fit to be considered and not whether it suffices for a demonstration." I Wigmore on Evidence (Third Ed.) ¶ 28.

on the charges for the year to which the questioned evidence directly pertained.

We are not unmindful of the contention that "false testimony knowingly secured and given projected itself (from 1961) into the year 1962 when the jury took the false schedules in their deliberations." This, of course overlooks the fact that there was no residual prejudice which prevented the appellant's acquittal on the 1960 charges as well. We recognize, however, the possibility that not being convinced beyond a reasonable doubt as to the 1960 and 1961 charges, the evidence as to those years could have had some influence in the consideration of the 1962 counts and, hence, we have considered it necessary to examine appellant's contention further.

■ It is true that the government's evidence with respect to 1961 was highly circumstantial and in one vital respect conflicting. Yet, the question of truth or falsity, as well as the reasonable inferences to be drawn, was for the jury. In determining whether the circumstantial evidence was sufficient, the evidence and the legitimate inference to be drawn therefrom are viewed in a light most favorable to the government.[7] There was no direct testimony that the bulky envelope which Barron testified he handed to appellant actually contained the $5,000 which according to two of the witnesses was delivered to Barron before he called upon appellant. But direct, as distinguished from circumstantial, evidence is not essential to a criminal conviction[8] and manifestly evidence does not have to be direct to warrant its receipt or consideration at all. It was the province of the jury to resolve conflicts and to reconcile the testimony if reasonably possible, considering the motives of the witnesses with respect to conceal-

ments or admissions, and all other circumstances in the case. Appellant's denial that he received any envelope or other package from Barron while hedging as to whether an interview actually took place as claimed, the knowledge appellant displayed of the intended subject matter of the visit immediately following Barron's introduction and before anything was said by Barron, appellant's suggestion to Barron that the bill likely would pass, contrasted with his subsequent advice to a fellow legislator not to talk against the bill and that it would not pass anyway, and the appellant's acceptance from Barron of a bulky envelope without comment or explanation on the part of either, according to Barron, were additional circumstances to be considered.

■ Finding no error or fundamental unfairness on the part of the trial court in the receipt of the circumstantial evidence concerning 1961 or in permitting it to be considered by the jury on the whole record, and the verdicts indicating as they do a discriminating consideration of the clearly sufficient evidence concerning 1962, the indirect attack upon the convictions relating to the latter year must be rejected.

■ What we have said concerning the sufficiency of the evidence supporting the 1962 counts is largely dispositive of the first of appellant's claims of error in the instructions to the jury. The trial court refused defendant's request No. 22 which would have had the court charge "that it is incumbent upon the Government not only to prove beyond a reasonable doubt that the defendant filed a false and fraudulent income tax return, but they must go further and prove beyond a reasonable doubt that the defendant committed some willful

7. United States v. Ayotte, 385 F.2d 988 (10th Cir. 1967); Reed v. United States, 377 F.2d 891 (10th Cir. 1967).

8. Reed v. United States, 377 F.2d 891 (10th Cir. 1967); Wall v. United States, 384 F.2d 758 (10th Cir. 1967); Swallow v. United States, 307 F.2d 81 (10th Cir.

1962); Estep v. United States, 140 F.2d 40 (10th Cir. 1943); Palermo v. United States, 254 F.2d 130 (9th Cir. 1958). Cf. American Tobacco Co. v. United States, 147 F.2d 93, affd. 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1945); Morton Salt Co. v. United States, 235 F.2d 573 (10th Cir. 1956).

and fraudulent act or acts, the likely effect of which would be to mislead or conceal from the taxing officers the amount of income upon which the tax is levied." This request focused upon the question of willfulness of acts other than that of filing a false return with intent to evade a recognized tax liability. The likelihood that other acts would mislead the taxing officers is again a little wide of the mark. General or collateral deceit, as distinguished from such specific intent is not an essential element of a violation of Section 7201. Sansone v. United States, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965). To the extent that appellant's request constituted a proper statement of the law it was reflected adequately in the court's charge.[9] We think this comment from Agnew v. United States, 165 U.S. 36, 51, 17 S.Ct. 235, 241, 41 L.Ed. 624 (1897), is apt here:

"The Court is not bound to accept the language which counsel employ in framing instructions, nor is it bound to repeat instructions already given in different language. * * * * [Citations omitted.] The instruction given was quite correct and substantially covered the instruction refused and as to the latter the court might well have declined to give it on the ground of the tendency of its closing sentence to mislead."

Finally, the appellant singles out the following portion of the court's charge as improperly shifting the burden of proof from the government to the defendant:

"As a general rule, it is reasonable to infer that a person ordinarily intends all of the natural and probable consequences of acts knowingly done or knowingly omitted.

"So unless the evidence in this case leads the jury to a different or a contrary conclusion, the jury may draw the inference and find that the accused intended all of the natural and probable consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any acts know-

---

9. The court charged among other things: "The word 'attempt' as used in this law involves two things: First, an intent to evade or defeat the tax; and second, some act by the taxpayer in furtherance of such intent. The word 'attempt' contemplates that the defendant had knowledge and understanding that during the calendar year 1960, 1961 and 1962, that he had income in such years which was taxable and which he was required by law to report, and that he attempted to evade or defeat the tax thereon or a substantial part thereof, by purposely failing to report all of the income which he knew he had during such calendar year and which he knew it was his duty to state in his return for such years. The intent of the accused to evade the tax as charged in Counts 1, 2 and 3 must be proved beyond a reasonable doubt to your satisfaction. There are various devices that may be resorted to in an attempt to evade or defeat tax. The one alleged in this indictment is the filing of false and fraudulent returns with the intent to defeat the tax or liability. The gist of the crime consists of wilfully attempting to escape the tax. The attempt to evade and defeat the tax must be a wilful attempt. That is to say, it must be made with the intent to keep from the Government a tax imposed by the income tax law which it was the duty of the defendant to report to the Government. The attempt must be intentionally done with the intent that the Government should be defeated of the income tax due from the defendant. 'Wilful' implies bad faith and evil motive * * *

"You are instructed that a tax return may be false because it is merely incorrect due to negligence or some other cause lacking in intent, or not involving a tax. Such a return is not necessarily wilful or an attempt to evade taxes. Thus in this case if you find that the defendant did fail to report income, but that such failure was due to negligence, inadvertence, or a misunderstanding of the law, or some other cause lacking in intent, then you must vote to acquit even though the failure to report does technically make the return a false return. The law does not impose upon the defendant a duty to produce evidence on any issue and a defendant has the right to rely upon the failure of the prosecution to establish beyond a reasonable doubt any essential element of the offense charged, if such failure in fact is found by the jury as to any particular count or counts."

ingly done or knowingly omitted by the accused."

Such a charge standing alone has been criticized [10] not without some justification as confusing, clumsy, or unnecessary, if not prejudicial, in other cases held to constitute reversible error,[11] and in another case deemed plain error.[12] When taken in context with an entire charge, however, most courts,[13] including this one,[14] which have considered the question, have accepted its principle as involving a mere rule of circumstantial evidence not inconsistent with the burden of the government and the doctrine of reasonable doubt, or at worst, as not constituting prejudicial error considering the instructions as a whole. Appellant professes to see significant difference in earlier cases decided by this court and the instant circumstances, pointing out that in *Roper* it is made clear that any presumption of the nature mentioned is rebuttable and that

evidence tending to negate intent to defraud had to be considered. Yet appellant especially criticizes the instruction here because it contained the expression, "so unless the contrary appears from the evidence." The latter expression in the context of the whole instructions was merely a different way of indicating that any inference was rebuttable, and no more shifted the burden of proof than did the *Roper* charge. Indeed, the instant charge was in some respects more circumspect. We think here, as was indicated in *Roper*, that it was clear to the jury that to convict it had to find from the evidence beyond a reasonable doubt that the defendant had the specific intent charged and that while circumstantial evidence, including inferences, could be considered, the burden of proof remained with the government. Omitted from the quotation utilized by appellant were related instructions immediately preceding or following it,[15] as well as

10. United States v. Releford, 352 F.2d 36 (6th Cir. 1965), cert. denied, 382 U.S. 984, 86 S.Ct. 562, 15 L.Ed.2d 473 (1966); United States v. Denton, 336 F.2d 785 (6th Cir. 1964); Imholte v. United States, 226 F.2d 585 (8th Cir. 1955); Moore v. United States, 375 F.2d 877 (8th Cir. 1967).

11. United States v. Barash, 365 F.2d 395 (2d Cir. 1966); Berkovitz v. United States, 213 F.2d 468 (5th Cir. 1954); Wardlaw v. United States, 203 F.2d 884 (5th Cir. 1953); Bloch v. United States, 221 F.2d 786 (9th Cir. 1955). Cf. Hibbard v. United States, 172 F. 66 (7th Cir. 1909).

12. Mann v. United States, 319 F.2d 404 (5th Cir. 1963). But cf. Helms v. United States, 340 F.2d 15 (5th Cir. 1964).

13. Agnew v. United States, 165 U.S. 36, 17 S.Ct. 235, 41 L.Ed. 624 (1897); Estes v. United States, 335 F.2d 609 (5th Cir. 1964); United States v. Denton, 336 F.2d 785 (6th Cir. 1964); Sherwin v. United States, 320 F.2d 137 (9th Cir. 1963), cert. denied, 375 U.S. 964, 84 S.Ct. 481, 11 L.Ed.2d 420, rehearing denied, 376 U.S. 946, 84 S.Ct. 796, 11 L.Ed.2d 771 (1964); United States v. Wilkins, 385 F.2d 465 (4th Cir. 1967); United States v. Littlejohn, 96 F.2d 368 (7th Cir. 1938).

14. United States of America v. Tijerina et al., 407 F.2d 349 (10th Cir. 1969); Elbel v. United States, 364 F.2d 127 (10th Cir. 1966); Roper v. United States, 54 F.2d 845 (10th Cir. 1931); cf. Laws v. United States, 66 F.2d 870 (10th Cir. 1933).

15. A person who knowingly does an act which the law forbids or knowingly fails to do an act which the law requires to be done, intending with bad purpose either to disobey or disregard the law, may be found to act with specific intent. Intent may be proved by circumstantial evidence. Indeed, it can rarely be established by any other means.

While witnesses may see and hear and so be able to give direct evidence of what a defendant does or fails to do, of course there could be no eyewitness account of the state of mind with which the act or acts were done or omitted; but what the defendant does or fails to do may indicate intent or lack of intent to commit the offense charged. * * *

Unless otherwise instructed, in determining the issues of intent, the jury is entitled to consider any statement made or acts done or omitted by the accused and all facts and circumstances in evidence in this case which may aid the determination of the state of mind of the accused.

other parts of the charge[16] rendering it plain that a specific intent to evade payment of the tax had to be proved and could not be presumed.

While no exceptions were taken to the court's charge, we have examined the instructions in view of the appellant's claim that they involved plain error in the above-mentioned respects. From what has been noted it is abundantly clear that they did not.[17] Any deficiencies in the instructions short of fundamental error were waived. Fed. R.Crim.P. 30.

Affirmed.

16. Some of these are quoted in footnote 3, and there were in addition the usual instructions concerning the presumption of innocence and the government's burden of proof to establish by evidence each essential element of the charge beyond a reasonable doubt.

17. United States of America v. Tijerina et al., 407 F.2d 349 (10th Cir. 1969); Moore v. United States, 375 F.2d 877 (8th Cir. 1967); Cf. Bloch v. United States, 221 F.2d 786 (9th Cir. 1955).