**Charles M. OERTLE, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**Kenneth B. McCAGUE, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**Nos. 8032, 8033.**

United States Court of Appeals
Tenth Circuit.

Nov. 10, 1966.

Rehearing Denied Feb. 15, 1967.

---

L. Karlton Mosteller and Robert B. Milsten, of Mosteller, Andrews & Mosburg, Oklahoma City, Okl., for appellant, Charles M. Oertle.

Robert S. Rizley of Crawford & Rizley, Tulsa, Okl., for appellant, Kenneth B. McCague.

John M. Imel, U. S. Atty. (Phillips Breckinridge, Asst. U. S. Atty., on the brief), for appellee.

Before LEWIS, BREITENSTEIN, HILL, SETH and HICKEY, Circuit Judges.

HILL, Circuit Judge.

Appellants appeal from a jury conviction on charges of attempting to evade the payment of excise taxes due the United States from the Oertle Wholesale Drug Company of Tulsa, Oklahoma.[1]

The indictment charged the two appellants jointly on nine counts and appellant Oertle separately on eight additional counts. The jury verdict convicted the two accused on all counts charged except count three which had been dismissed by the court.

A preliminary statement of the undisputed basic facts will be helpful in our approach to the various questions raised. Appellant C. Max Oertle assumed the presidency and management of the Oertle Wholesale Drug Company in 1957, after the deaths of his father and brother. He continued in such company capacities during the entire period covered by the indictment. Appellant Kenneth B. McCague, who is an accountant, became employed part time by the company during 1957 to keep and maintain certain books and records of the company and to prepare all tax returns, including the excise tax returns, which the company was required to file. His employment lasted until sometime in the early part of 1960. During his employment he prepared nine quarterly excise tax returns for the company which were filed with the government as provided for by law and the company, through appellant Oertle, paid the tax as shown by the returns. The indictment covers the period of seventeen quarters beginning with the last quarter of 1957 and ending with the first quarter of 1962.

After McCague became disassociated with the company a full time employee, one Dicesare, who was an accountant, assumed the duty of preparing the quarterly excise tax returns and he continued in the performance of that duty during the remainder of the time covered by the indictment.

The Oertle Wholesale Drug Company, during the period of the charged offenses was extensively engaged in the retail sale of such excise tax merchandise as jewelry, toilet preparations, luggage and handbags. In an apparent effort to keep a daily account of the excise tax due or to become due on merchandise sold, the cash registers in the departments where the tax applied were set to show three separate amounts on a tape whenever a sale was rung up. These separate amounts reflected the retail sale price of the article, the state sales tax collected upon the sale and the amount of the excise tax collected upon the sale. At the end of the day the tapes were collected and these three separate amounts entered in a daily cash journal. These figures later were posted in a monthly cash ledger and eventually put in a general ledger. The four quarterly excise tax returns made for the four quarters of 1956 reflected the excise tax due according to these company books and the tax was paid accordingly. Beginning in 1957 and continuing through the period covered by the indictment,

1. 26 U.S.C.A. § 7201 and 18 U.S.C.A. § 2.

the company excise tax returns reflected only a percentage of what the books showed to be due. During that period when McCague was employed by the firm, the percentage varied from 27.5 percent to 68.3 percent. After McCague left the firm's employment the returns filed generally reflected 68.3 percent of what the company books showed the liability to be.

▬ Appellant Oertle first contends that the defendants were "convicted of a crime not charged in the indictment nor defined by the applicable law." Title 26, U.S.C.A. § 7201 makes it an offense to wilfully attempt to defeat or evade payment of any tax imposed under Title 26. The retailers' excise tax is one of the taxes so imposed and clearly is within the scope of the crimes defined by the above section. The indictment in the case followed the admonition of Rule 7 (c) of F.R.Crim.P. in that it was "a plain, concise and definite written statement of the essential facts constituting the offense charged." [2] Counsel fails to point out any specific defect in the indictment or any ambiguity in the wording of the applicable tax statutes and we find none. Suffice it to say the statute and the regulations impose upon certain enumerated items sold at retail a tax equivalent to 10 percent of the price for which they are sold and the tax is paya-

ble by the retailer at the end of each quarter of a year, when such retailer must make a return showing, and pay, all such excise taxes due according to the retail sales made during such quarter. The Oertle Company employed a relatively simple method of keeping account of its taxable sales, which is described above and is a generally accepted accounting method of keeping a record of the taxable sales and of the amount of excise tax due. There is no substance to appellants' attack upon the statutes or the indictment. In appellants' brief, under this heading, counsel goes far afield and points out alleged trial errors in permitting the government to argue and introduce evidence to the effect that a mere collection of amounts allegedly designed as excise taxes created a liability to the government and made these amounts "trust fund taxes which belonged to the government." This contention is not germane to the attack upon the statute and the indictment. It likewise has no substance but we will consider it generally at other places in this opinion.

▬ Oertle's second point concerns the trial court's refusal to compel the government, under 18 U.S.C.A. § 3500, to produce for use in cross-examination all of Special Agent Nathman's report of the investigation. Nathman investigated

---

**2.** All of the counts of the indictment were couched in the same language except for dates, amounts of tax reported and due and owing and names of defendants. Count One is set out as an example:

"That on or about the 28th day of January, 1958, in the Northern Judicial District of Oklahoma, Charles M. Oertle, also known as C. M. Oertle and C. Max Oertle, who was president of Oertle Wholesale Drug Company, a corporation, and Kenneth B. McCague, did willfully and knowingly attempt to evade and defeat a large part of the retail dealer's excise taxes on jewelry, toilet preparations, luggage, handbags and other articles of merchandise, imposed by Sections 4001, 4021, and 4031 of the Internal Revenue Code, due and owing by the corporation to the United States of America for the quarter ended December 31, 1957, by preparing and caus-

ing to be prepared a false and fraudulent retail dealer's excise tax return, which return was thereafter filed with the District Director of Internal Revenue for the Internal Revenue District of Oklahoma City at Oklahoma City, Oklahoma, wherein it was stated that the retail dealer's excise taxes due and owing by the corporation to the United States of America by reason of the retail sale of the aforesaid articles of merchandise, for said quarter were the sum of $3,325.22, whereas, as they then and there well knew, there were due and owing by the corporation to the United States of America for the said quarter retail dealer's excise taxes in the sum of $12,083.87.

"In violation of Section 7201, Internal Revenue Code; 26 U.S.C. Section 7201; and 18 U.S.C. Section 2."

the case for the Internal Revenue Service and made a report to his superiors of his investigation, which included his recommendation in the case, a list of witnesses who had knowledge of various facts of the case and a list of exhibits in support of the report. He testified at the trial and after completion of his direct testimony, counsel for the defendants moved to require the government to produce, under Section 3500, the entire report so they could inspect it and use it in cross-examination. The government objected to producing certain portions of the report on the ground that they were not covered in Nathman's direct testimony. The trial judge sustained the objections by the government and defense counsel acquiesced in the ruling.[3] He then proceeded with the cross-examination of witness Nathman. During the course of the cross-examination, defense counsel renewed the request for production and the same was denied. The trial judge carefully stated that he was not compelling the production of that part of Nathman's report which set forth the agent's conclusions and recommendations, the list of witnesses suggested in support of the factual part of the report and the list of exhibits attached to the report.

Our discussion of this point should be prefaced with an observation concerning the government's proof in this case. In the case the government did not need to rely upon the testimony of Agent Nathman to make a submissible case. The books and records of the company plus the tax returns and the testimony of the former company employees made a submissible case. The testimony of Nathman helped only insofar as his interviews with the two accused were concerned and the defense was given those parts of the report pertaining to all of such interviews.

18 U.S.C.A. § 3500, commonly referred to as the Jencks Act, is clear as to its application to the trial facts of this case. In substance it provides that in a criminal prosecution, after a government witness has testified on direct examination, the court shall, upon motion of the defendant, order the government to produce any statement of the witness in the possession of the government which relates to the subject matter of the testimony of the witness. When the entire contents of the statement requested relate to the subject matter of the testimony of the witness, it is the duty of the court to order the entire statement delivered directly to the defendant. The Act further provides for objection on behalf of the government to production of any part of the statement on the ground that it does not relate to the subject matter of the testimony of the witness.

Properly, under this latter provision the government, in this case, objected to producing the parts of Nathman's report in which he made his conclusions and recommendations and listed the names of the witnesses and the exhibits. The trial court was correct in sustaining the government's objections. A reading of Nathman's entire direct testimony clearly shows that neither the conclusions and recommendations, the list of witnesses nor the list of exhibits relate to or concern in any manner such testimony. The authorities cited by appellants on this question are simply not in point. It is true they stand for the proposition that the report of a government agent is within the purview of the Act and that it may be ordered produced.[4] However, none

3. "THE COURT: Will you make the record, then you withdraw—you make your record then I will make mine.

MR. RIZLEY: Well, we are satisfied.

MR. MILSTEN: We are satisfied, since we have the intent section, we withdraw our request.

THE COURT: For the balance of the statement of Nathman, that had to do with conclusions and recommendations, beginning at Page 56 and including the list of exhibits and list of witnesses through Page 66.

MR. MILSTEN: Yes, Your Honor, we will withdraw our request."

4. United States v. O'Connor, 2d Cir., 273 F.2d 358; United States v. Prince, 3d Cir., 264 F.2d 850; Bergman v. United States, 6th Cir., 253 F.2d 933; Burke v. United States, 8th Cir., 279 F.2d 824;

of these cases support the contention that the whole statement must be produced if any part of it relates to the testimony of the witness.

Subsequent to the enactment of the Jencks Act this court in Sells v. United States, 262 F.2d 815, cert. denied 360 U. S. 913, 79 S.Ct. 1298, 3 L.Ed. 1262, approved the excising of parts of an otherwise produceable statement the same as was done in this case. There are other cases supporting this interpretation of the statute.[5] We find no error by the court on this point.

■ Appellants' next attack is upon certain of the court's instructions to the jury. In this regard they first contend that the instruction on the government's theory of the case was incorrect. The trial judge very carefully, and at great length, instructed the jury on that point. The jury first had the wording of the indictment, the court then gave it the pertinent parts of the statute defining the crime charged, correctly set out the elements of the offense which necessarily had to be proven beyond a reasonable doubt by the government, and then in plain language explained the government's theory of the case.[6] The instructions as a whole were sufficient in this regard.

■ Error is pointed because of the trial court's refusal to give an instruction concerning testimony given by an accomplice or co-conspirator. As pointed out by appellee, we are unable to find in the record any objection to such failure as required by Rule 30, F.R.Crim.P. Furthermore, a reading of the record of the testimony convinces us, that such an instruction was not required.

■ The court's instruction on circumstantial evidence is contended by appellants to be erroneous and inadequate. In deciding this point, we do not consider this case to be a circumstantial evidence case. The government's proof consisted of the books and records of the Oertle Company, the tax returns filed by the company, the evidence of the payment of the tax as shown by the returns, statements made by the defendants to government agents in the course of their investigation and the summaries prepared by the agents from the company books, records and tax returns. This was all direct evidence. It is true there was no direct evidence on the issues of wrongful intent and willfulness. But the court adequately covered those issues in separate instructions concerning the inferences the jury was permitted to draw from the direct evidence, which is something entirely different than circumstantial evidence. Any legal deficiency in the circumstantial evidence instruction is certainly without any importance in the case and cannot be said to be prejudicial to either of the appellants.

United States v. Ellenbogen, 2d Cir., 341 F.2d 893; Lewis v. United States, 8th Cir., 340 F.2d 678.

5. Ayash v. United States, 10 Cir., 352 F. 2d 1009; Travis v. United States, 10 Cir., 269 F.2d 928, reversed on other grounds, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340; Hance v. United States, 8 Cir., 299 F.2d 389; West v. United States, 6 Cir., 274 F.2d 885, cert. denied, Haug v. United States, 365 U.S. 811, 81 S.Ct. 688, 5 L.Ed. 2d 691; Reinthaler v. United States, 365 U.S. 819, 81 S.Ct. 701, 5 L.Ed.2d 697, rehearing denied, 365 U.S. 815, 81 S.Ct. 899, 906, 5 L.Ed.2d 864; Holmes v. United States, 4 Cir., 271 F.2d 635.

6. "* * * The theory of the Government's case is based on the charge that the defendant attempted to evade the payment of excise tax by preparing, or causing to be prepared, certain false and fraudulent quarterly excise tax returns for the corporation. This is based on the law which requires a retailer to pay to the Government an excise tax equivalent to 10 per cent of the sale of certain prescribed articles, upon the sale of such taxable merchandise to a customer, the retailer incurs a liability to the Government which liability he generally passes on to the customer. The theory of the Government's case here is not that the corporation failed to collect all the tax due under the statute, but that the corporation did collect certain excise taxes, as reflected by its books and records, substantial amounts of which it failed to report and pay over to the Government."

**726**

■ The next attack upon the instructions concerns willfulness and willfully.[7] There is no merit to this point. The instruction given was fair and adequate and the court's failure to give any of the several instructions requested was not erroneous. A trial court is not required to give a requested instruction even though it correctly states the law applicable if the point of law it refers to is fairly and adequately otherwise covered by the instructions.[8]

■ Evidence of good character was introduced by both appellants and the trial judge gave an instruction to the jury concerning its consideration of such evidence.[9] Appellants attack this instruction because it does not advise the jury, in effect, that evidence of good character may, standing alone, be sufficient to generate a reasonable doubt. It is true that some of the prior decisions of this court may be construed to compel the giving of such an instruction in every case in which evidence of good character is admitted.[10] Likewise, it may be argued that those decisions do not go to that extreme. In any event, we are convinced that the law of this Circuit should be clarified in this regard. Judge Breitenstein, in Petersen v. United States, 10 Cir., 268 F.2d 87, discussed the development of the rule in this Circuit concerning the giving of such an instruction and this opinion need not be prolonged by repeating that history. The Supreme Court, in Edgington v. United States, 164 U.S. 361, at 366, 17 S.Ct. 72, at 73–74, 41 L.Ed. 467, laid down the rule of law on this point the Circuit Courts have since sought to follow.[11] It is significant that the Circuits have not been consistent in the interpretation of Edgington and the later case, Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168.[12]

---

7. "You are instructed that the word 'willfully' as used in the above mentioned tax statute, means with knowledge of one's obligation to pay the tax due and with intent to defraud the Government of that tax."

"The acts charged in the indictment are alleged to have been done knowingly. The purpose of adding the word 'knowingly' was to insure that no one would be convicted on an act done because of mistake or other innocent reason."

"The returns must be intentionally and designedly made with a purpose to do wrong, and even if the defendants, or either of them, were negligent or careless in making the original return, if this is unaccompanied by bad faith on their part, they must be found not guilty."

8. Sanseverino v. United States, 10 Cir., 321 F.2d 714.

9. "Evidence that the defendants were persons of good character and had a good reputation in the community where they lived prior to the alleged commission of the offense charged in the indictment has been introduced. Such evidence is competent and is to be considered in connection with other evidence in the case. Such evidence is admitted upon the theory that a man bearing a good reputation for being an honest and law-abiding citizen is not as likely to commit a crime as one who doesn't bear such a reputation. Of course, a good reputation is not a defense to the charge made by the Government in this case, but it may be sufficient to generate a reasonable doubt as to the guilt of the defendant, and it is a circumstance to be weighed by the jury in connection with all of the other evidence in the case."

10. Miller v. United States, 10 Cir., 120 F. 2d 968; Hayes v. United States, 10 Cir., 227 F.2d 540, cert. denied 353 U.S. 983, 77 S.Ct. 1280, 1 L.Ed.2d 1142; Greer v. United States, 10 Cir., 227 F.2d 546; Petersen v. United States, 10 Cir., 268 F.2d 87; Johnson v. United States, 10 Cir., 269 F.2d 72; Bird City Equity Mercantile Exchange v. United States, 10 Cir., 338 F.2d 790.

11. "Whatever may have been said in some of the earlier cases, to the effect that evidence of the good character of the defendant is not to be considered unless the other evidence leaves the mind in doubt, the decided weight of authority now is that good character, when considered in connection with the other evidence in the case, may generate a reasonable doubt. The circumstances may be such that an established reputation for good character, if it is relevant to the issue, would alone create a reasonable doubt, although without it the other evidence would be convincing."

12. See compilation of cases in Petersen v. United States, supra, footnote 3.

A reconsideration of Edgington and Michelson convinces us they do not compel the giving of the "standing alone" instruction in every case in which evidence of good character has been admitted. The circumstances of a particular case may require it, as stated in both Edgington and Michelson.[13] Such circumstances would certainly exist when an accused presented only evidence of good character and rested his defense upon this evidence coupled with the failure of the prosecution to sustain the burden of proof. There may be other circumstances requiring the giving of such instruction but we will not attempt here to anticipate them. We are concerned only with the circumstances presented by this record.

It is important in this case that the appellants, for their defense, did not rely solely on good character evidence; such evidence was, in fact, only incidental to the prime defenses. As demonstrated by the opening statements and closing arguments of counsel for the defendants, the prime defenses in the case were: There was no additional excise tax due from the corporation for any of the periods in question; neither of the accused had any willful design to evade any excise tax; and, additionally as to McCague, it was not his responsibility to determine the amount of excise tax due and in the making of the nine returns he relied solely upon the tax information furnished to him.

It seems inconsistent and confusing, without additional explanation, to instruct the jury it must consider evidence of good character together with all of the other evidence in the case, which is the generally accepted rule, and then say evidence of good character, standing alone,

may generate a reasonable doubt. Judge Murrah pointed this out in his specially concurring opinion in Petersen, supra.[14]

We must conclude, consistent with what we have said, the circumstances of this case did not require the giving of the "standing alone" instruction.

As a part of their defense, appellants produced witness Caughron, an accountant employed by the Oertle Company in years subsequent to those covered by the indictment. He apparently satisfied the court as to his qualifications as an expert and was permitted to testify, in his opinion the Oertle Company had overpaid its excise tax liability to the government for the years in question. Two exhibits were then offered by the defendant, numbered 216 and 217, showing Caughron's computations. The first exhibit covered the period beginning March 1, 1956 and ending February 28, 1959 and the second the period of March 1, 1959 through December 31, 1961. The court, after objections were raised by the government, refused to admit either exhibit. Appellants contend this refusal was error. The admission of the oral testimony of this witness and the rejection of the exhibits appear to be rather inconsistent, but a careful reading of the testimony of this witness convinces us that his expert opinion did not have substantial factual support. We reach that conclusion because of the method employed by the witness. In making the computation the witness first relied upon purchase invoices. Admittedly, all of the purchase invoices for the period covered were not available and all such invoices were not included so the end result could not be correct. Also, as pointed out by the government, the in-

13. See Smith v. United States, 9 Cir., 305 F.2d 197, cert. denied Corey v. U. S., 371 U.S. 890, 83 S.Ct. 189, 190, 9 L.Ed.2d 124.

14. In that opinion, 268 F.2d at page 90, Judge Murrah also said:
"Evidence of good character may, however, when standing alone, in and of itself create a reasonable doubt of guilt, and that where it does stand alone, the jury should be so instructed * * *.

But I am unable to find any good reason for telling a jury that good character alone may be sufficient to generate a reasonable doubt when there is other evidence equally important and equally persuasive. To me, such an instruction in cases of this kind places an emphasis and an importance upon character testimony which was never intended, and which the whole context of the Edgington case denies."

ventory figures at the beginning and end of the periods covered by the two exhibits were not in evidence and the evidence fails to satisfactorily explain the so-called "shrinkage loss" used in the computation to further reduce the tax liability. Even counsel for appellant Oertle admitted to the court, in urging the admission of the two exhibits, "It is an opinion, your honor. That's all it is. Don't put it forth for anything else, * * * but what we are talking about is his opinion. I submit that they should go in for what they are worth * * *."

The use of summary exhibits in proper cases has been sanctioned by this court only when they reflect and summarize other evidence in the case.[15] When such a proposed exhibit contains evidence not otherwise in the record it loses its identity as a summary and is not admissible. These two questioned exhibits contained and were bottomed on matters not otherwise in evidence in the case and were properly rejected by the court.

Counsel for appellant McCague adopted generally, in support of his case, the brief of appellant, Oertle, but filed a separate brief, in which some additional points are made in urging a reversal.

■ The first group of points pertains to the sufficiency of the evidence and error in overruling appellant's motion for judgment of acquittal or, in the alternative, for a new trial. We have heretofore summarized the evidence adduced by the government to prove its case and it need not be repeated. We have also set out pertinent parts of the court's charge to the jury, particularly with reference to the necessary elements of proof and the burden of the prosecution to prove these elements. A complete answer to these points is our conclusion that the jury was fairly and adequately instructed as to the law of the case and that the evidence in the record gives overwhelming support to the verdicts returned by the jury.

■ Appellant McCague next claims error in admission into evidence of the summaries prepared by agent Bealmear. His complaint seems to go chiefly to the nomenclature used by the agent in denoting certain parts of his summaries. They are all words and phrases of common usage in the accounting field and we can find nothing objectionable or prejudicial about them. Most of them were used in the oral testimony of various witnesses in the trial. We believe these summaries meet the tests of the numerous cases on the point from this Circuit, which are cited elsewhere in this opinion, and were clearly admissible.

■ Appellant McCague urges error by the trial judge in refusing the request of the jurors to be furnished with a transcript or copy of the instructions given to the jury. The trial consumed eight days including two night sessions. One of these night sessions was held on the last day of the trial and the case was finally submitted to the jury at approximately 11:00 o'clock p. m. of the eighth day. The jury was then sent out to commence their deliberations. After about an hour of deliberations, the jury was brought back to the courtroom and excused until the following morning at 10:15 a. m. After some deliberations that morning, the jury requested, in writing, that they be furnished with a copy of the instructions given to them during the previous evening session and also with certain exhibits. Those requested exhibits that had been received in evidence were given to the jury but the court refused to furnish the jury with a copy of his instructions. He did tell the jurors in substance that after further deliberations if they still wanted the instructions he would reconsider the request. The record reflects that after further deliberations the jury requested the instructions given " * * * as to the definition of did wilfully and knowingly attempt to evade." The jurors were then brought into the courtroom and the judge read the requested instruc-

15. Conford v. United States, 10 Cir., 336 F.2d 285; Swallow v. United States, 10 Cir., 307 F.2d 81, 84, and cases there cited.

tions to them. Appellant says the long session of court on the final day and the lateness of the hour on that day when the jury was instructed leads to the conclusion that the jury was confused concerning the instructions and did not comprehend their import.

We agree that it is certainly not good judicial practice to hold unnecessarily long daily sessions of jury trials and that night sessions of such trials should not be encouraged. However, we have carefully read the record in this connection and we can find no indication of prejudice to the appellants in this case by reason of either the long day session or the night session. Neither can we say that prejudice is inherent because of such trial procedure.

Whether the jurors should be given a copy of the instructions is within the sound discretion of the trial judge.[16] In the first instance, it is the duty of the judge to instruct the jury as to the applicable law in plain, understandable language. The judge should be satisfied in his own mind that the jurors comprehend and understand the law as applied to the facts of the case. He may reach this conclusion from his own consideration of the instructions given, his observation of the jurors in the courtroom, requests from the jury during its deliberations and his consideration of the verdict rendered.

Although the trial judge here, upon request, did not hand the jurors a copy of all of his previously given instructions, in his refusal the door was left open for further consideration of the request. At a later stage of the deliberations, the jurors requested the instructions pertaining to a specific and crucial phase of the case and such request was complied with. We find no error with reference to this point.

We have, with care, reviewed the entire record before us in this case. The government's evidence is overwhelming and we have found no substantial trial errors, amounting to prejudice against either Oertle or McCague. The trial was a prolonged one, due in part to the permitted latitude of cross-examination by defense counsel and the repetitious nature of that cross-examination. Appellants complain about confusion during the trial. The cold record does not substantiate such a charge but does reflect a vigorously tried case on the part of all counsel.

Affirmed.

---

16. C.I.T. Corporation v. United States, 9 Cir., 150 F.2d 85; Carrado v. United States, 93 U.S.App.D.C. 183, 210 F.2d 712, cert. denied, Atkins v. United States, 347 U.S. 1018, 74 S.Ct. 874, 98 L.Ed. 1140; Manfredonia v. United States, 347 U.S. 1020, 74 S.Ct. 876, 98 L.Ed. 1141; Smith v. United States, 349 U.S. 932, 75 S.Ct. 777, 99 L.Ed. 1262, and 350 U.S. 938, 76 S.Ct. 310, 100 L.Ed. 819; Copeland v. United States, 80 U.S.App.D.C. 308, 152 F.2d 769, cert. denied 328 U.S. 841, 66 S.Ct. 1010, 90 L.Ed. 1815.