## Commonwealth v. Neely

*Bruce Sagel, assistant district attorney,* for the commonwealth.

*Stephen D. Gross,* for defendant.

ABRAHAM, J., January 28, 1987—Defendant, James Neely, was tried to a jury before us on July 23 to 25, 1985, inclusive, and was found guilty of pos-

sessing an instrument of crime[1] and recklessly endangering another person.[2] Post-verdict motions were timely filed, argued and denied. After careful consideration, defendant was sentenced to two years drug and psychiatric probation. This appeal followed.

The facts in this case are not complicated and will be briefly summarized. This case involved a chance meeting between defendant and Donald Williams near the Simon Recreation Center in West Oak Lane. Williams was walking his dog near his home off leash. Neely was walking on the sidewalk coming towards Williams. As the two approached, Neely cursed at Williams for not having his dog on a leash and pulled a knife from up his sleeve and threatened to cut up the dog with it. Williams, although in street clothes, was an off-duty deputy sheriff. Williams produced his badge and drew his sidearm, and told Neely not to come any closer to him or his dog, and to go about his business. Neely disregarded these warnings and began to slash at Williams' face with the knife.

A warning shot was fired, but Neely did not believe the gun was real so he continued to circle around Williams, knife in hand. A passing car driven by Williams' neighbor, Frederick Wilson, stopped at the disturbance and Williams told his neighbor to summon the police. As police cars with lights flashing arrived in the area, Neely tried to jump on a small retaining wall supporting the playground fence, but he lost his balance. As Neely fell towards Williams, Williams felt he would be stabbed, so he fired a shot striking Neely in the leg,

---

1. 18 Pa. C.S. §907(a).
2. 18 Pa. C.S. §2705.

Neely climbed up and over the chain link fence and jumped into the playground just as police arrived. The police told Neely to halt, which Neely at first disregarded. Finally, after police told him repeatedly to halt, he did so after he tossed a blue satchel aside. A knife was recovered from the grass and Neely's blue satchel was recovered near a flagpole.

Defendant offered testimony from the treating physician at the hospital Neely was transported to after his arrest, to establish the path the bullet took. It was also brought out that Neely gave a false name to the hospital staff.

The defendant took the witness stand, offering extensive testimony covering approximately 175 pages of transcript on both direct and cross-examination. The thrust of Neely's testimony was not that Neely acted in self-defense but that Neely pulled out a knife he was carrying because he was afraid the complainant's dog might attack him. He further asserted that an argument erupted over the dog and the complainant, in turn, pulled out a gun and ordered Neely to drop his knife. When Neely refused, the complainant fired a warning shot, after which Neely and the complainant paced up and down a driveway. When Neely felt he could safely get away from the complainant, he climbed up a chain link fence and as he was about to go over the top of the fence, he was shot in his leg by the complainant for no reason at all. Neely's defense was based on the theory that he was shot willfully and wantonly for no reason other than Sheriff Williams just "blew his cool" and that the sheriff "has to cover his rear end of [sic] shooting a man and discharged his weapon in the street," and had the complainant not been a sheriff he would be on trial, not Neely.

Neely also offered two character witnesses. Neely's first witness as to his character testified that Neely's reputation was as "an honest, passive, decent and good human being" and that he had a good reputation for being peaceful and law-abiding. On cross-examination, Coleman further testified that Neely's passiveness is "routinely known" and that Coleman had a conversation with two other friends of defendant in which they all said, "What a nice and friendly and peaceful and innocent type of individual Mr. Neely seems to be to us."

His other reputation witness was Bernard Bunn, the recreation supervisor at the Simon Recreation Center. Bunn testified that Neely was "one of our original tennis players and was a volunteer around the playground" and that he had an "excellent reputation in the neighborhood."

Neely raises two issues in post-verdict motions, only one of which merits discussion.[3] Defendant claims that the court improperly refused to instruct the jury that evidence of defendant's prior good reputation, "in and of itself, is such as to create a reasonable doubt."[4]

Section 3.06 of the Pennsylvania Suggested Standard Jury Instructions consists of the following,

---

3. In an answer to Mr. Gross' objection, we believe the court reporter erred in transcribing the case name "Parks" as we are not aware of any such case in Pennsylvania. We have no present recollection of what case name we did mention at our side-bar conference.

4. The second issue, i.e., that the assistant district attorney was improperly allowed to ask certain questions on cross-examination about the bag defendant was carrying, merits no discussion since defendant volunteered this information in spite of repeated warnings by the court to him to answer questions and not to volunteer information. More to the point, what was in the bag, marijuana, was part of the natural history of

inter alia:

"(1) The defense offered evidence tending to prove that defendant is a person of good character. I am speaking of the defense witnesses who testified about defendant's good reputation for (honesty) (truthfulness) (sexual morality) (peaceableness) (being a law-abiding person)(_____).

. . .

(3) The law recognizes that a person of good character is not likely to commit a crime which is contrary to his nature. Evidence of good character may by itself raise a reasonable doubt of guilt and justify a verdict of not guilty.

(4) You must weigh and consider the evidence of good character along with the other evidence in the case. If on all the evidence you have a reasonable doubt of defendant's guilt you must find him not guilty. However, if on all the evidence, you are satisfied beyond a reasonable doubt that defendant is guilty you should find him guilty."

In our charge, we stated the following on character evidence:

"Evidence of good character is very important testimony, because the law says that when a person has a prior good reputation in the community, that person is not likely to commit a crime that's against that person's nature. Evidence of good character is

———

the events which unfolded that evening and explained why Neely was anxious to avoid police and why he discarded the bag when he was about to be apprehended. The jury was not informed of the bag's contents and any inference of criminality is mere conjecture on the part of defense counsel. See *Commonwealth v. Evans*, 343 Pa. Super. 118, 132, 494 A.2d 383, 390 (1985).

material and essential testimony in determining the guilt or innocence of defendant.

"This kind of testimony as to defendant's good character is not to be made light of. It's not a mere makeweight thrown in to fill out the case or fill in a gap. It's affirmative, substantive testimony to be weighed and considered by the jury in connection with all the other evidence in the case as bearing upon the question of whether or not the commonwealth has or has not established the guilt of the defendant as he stands charged beyond a reasonable doubt."

This case provides us a long-overdue opportunity to urge upon our appellate courts that Pennsylvania law on the evidentiary weight given to reputation testimony in cases such as this one is both unsound as well as unjustified and must be repudiated. Instead, we believe that our commonwealth should be brought into the 20th century by a change in jury instructions which, while allowing defendants in every criminal case to introduce substantive reputation evidence, will not compel a charge that reputation evidence "alone" or "of itself" may justify an acquittal when defendant relies on some other primary defense. By calling other kinds of witnesses to the stand, in addition to those offering reputation testimony, or when taking the stand himself, such an instruction is absurd. The "of itself" or "standing alone" charge should be retained and employed but only when reputation is the sole evidence offered so that it can truthfully be said to be "standing alone" or "of itself." See *United States v. McMurray*, 656 F.2d 540 (10th Cir., 1980), reheard en banc on other grounds, 680 F.2d 695 (1981).

For too many years, our courts have elevated reputation evidence to undeserved heights when the defense elects to put on a case. Logic and rea-

soning command that in such circumstances, all the evidence, including defendant's reputation evidence, must be considered on a par by the jury in determining if the commonwealth has overcome the presumption of innocence and convinced the jury beyond a reasonable doubt of defendant's guilt.

We will leave for another time the value of "community reputation" testimony as compared, for example, with offering other, more convincing and reliable forms of evidence. It is profitable in the context of discussing why undue reverence has been paid to reputation testimony to note the following:

"The Anglo-American rules of evidence have occasionally taken some curious twistings in the course of their development; but they have never done anything so curious in the way of shutting out evidential light as when they decided to exclude the person who knows as much as humanly can be known about the character of another, and have still admitted the secondhand, irresponsible product of multiplied guesses and gossip which we term 'reputation.' "[5]  7  Wigmore,  Evidence  §1986 (Chadbourne rev. 1981).

---

5. Professor H. Richard Uviller in Evidence of Character to Prove Conduct: Illusion, Illogic and Injustice in the Courtroom, 130 U. of Pa. L. Rev. 845 (1982), notes:

"Of the three sources of character evidence—commonly repute, individual opinion, and significant behavior—the most dangerous is the most commonly admitted under prevailing norms: reputation. First, of course, the convention for eliciting such evidence is often a hollow form. A witness rarely reports on the general community regard, as the form requires, but merely projects his personal opinion unto the hypothetical minds and conversations of an ill-defined group of anonymous neighbors and associates. But even if the character witness in this mode of proof were actually reporting on the community view of the party's character for, let us say, pacific deportment,

We believe there are several compelling reasons for repudiating section 3.06 or any similar "of itself" instruction. Although pattern instructions are suggestive rather than binding, the language used in this instruction has taken on a life of its own. The advisory committee's note to Fed. R. Evid. 404 states that the "circumstantial use of character evidence raises questions of relevancy as well as questions of allowable methods of proof. . . . [The] basis [of the rule] lies more in history than in logic. . . . In any event, the criminal rule is so deeply embedded in our jurisprudence as to assume almost constitutional proportions and to override doubts of the basic relevancy of the evidence."

(1) This instruction is both confusing as well as contradictory:

"It seems inconsistent and confusing . . . to instruct the jury it must consider evidence of good character together with all of the other evidence in the case, . . . and then say evidence of good character, standing alone, may generate a reasonable doubt." *Oertle v. United States*, 370 F.2d 719, 727 (10th Cir., 1966).

(2) It improperly considers character synonymous with reputation, whereas character is the totality of inherent qualities of a person, reputation being the opinion which others have formed and ex-

---

what do we know about the behavior taken into account, the thought processes of the assorted people, or the clarity of communication employed to arrive at this consensus? Obviously, very little. At best, the witness cannot know or say what errors, malice, or invention fed the local rumor market." Id. at 885.

The conventional parade of "character witnesses" sanctioned by the rule, offering either vague and unsubstantiated reports on general repute or personal endorsements (usually born of friendship or obligation) adds little, if anything, of relevance to the issues, and provides only a better chance of victory (or escape) to the "well connected" party. Id. at 882.

pressed of his character. "Character and reputation are as distinct as are destination and journey." 1 A Wigmore, Evidence §52 (Tillers rev. 1983); see also, 5 Wigmore, Evidence §§1608-1609 (Chadbourne rev. 1974).

(3) Such an instruction is a judicially sanctioned invasion of the province of the jury in violation of the traditional separation of function of judge and fact finder.

"[I]t is within the province of the trier of fact, in a criminal prosecution, to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. So, too, the finder of fact is free to believe all, part or none of the evidence. *Commonwealth v. Stockard,* 489 Pa. 209, 413 A.2d 1088 (1980); *Commonwealth v. Tate,* 485 Pa. 180, 401 A.2d 353 (1979); *Commonwealth v. Lawton,* 272 Pa.Super. 40 414 A.2d 658 (1979)." *Commonwealth. v. Croll,* 331 Pa. Super. 107, 116-17, 480 A.2d 266, 271 (1984); see also *Commonwealth v. Favinger,* 358 Pa. Super 245, 516 A.2d 1386, 1388 (1986).

Asserting that reputation is a fact, before the fact finder has had the merest opportunity to pass upon it, is clearly wrong. Reputation evidence is not a "fact." Rather, it is merely testimony which is admitted as circumstantial evidence from which the jury may, if it sees fit, draw an inference that the fact of defendant's good character does exist. See 5 Wigmore, Evidence §1609 (Chadbourne rev. 1974).

The intrusion is made greater by the added emphasis resulting from the statement that "the law recognizes that a person of good character is not likely to commit a crime against his nature." See Pennsylvania Suggested Standard Criminal Jury Instructions §3.06 (1979). No purpose of equity or fairness is served by such an instruction except to further impress upon the jury just how important

the trial court thinks this evidence is. No one, not even the law, can look into the heart of a man to derive what forces impel him to act. Persons of impeccable reputations have from the dawn of man risked their reputations and everything else, for that matter, on folly and enterprises of small consequence or affairs of the heart.

. (4) Such an instruction is a judicial invitation to the fact finder to single out one piece of evidence and to ignore or devalue the rest. Singling out and giving special attention to reputation, simply put, sends a wrong signal to the jury.

"The 'standing alone' instuction conveys to the jury the sense that even if it thinks the prosecution's case compelling, even if it thinks defendant a liar, it it also concludes that he has a good reputation this may be the 'reasonable doubt' of which other instructions speak. A 'standing alone' instruction invites attention to a single bit of evidence and suggests to jurors that they analyze this evidence all by itself. No instruction flags any other evidence for this analysis—not eyewitness evidence, not physical evidence, not even confessions. There is no good reason to consider any evidence 'standing alone.' " *United States v. Burke,* 781 F.2d 1234, 1239 (7th Cir., 1985); see also *United States v. Borders,* 693 F.2d 1318 (11th. Cir., 1982), cert. denied, 461 U.S. 905, 103 S.Ct. 1875, 76 L.Ed. 807 (1983).

Judge Murrah, specially concurring in *Peterson v. United States,* 268 F.2d 87, 90 (10th Cir., 1959), noted the following:[6]

"But I am unable to find any good reason for telling a jury that good character alone may be sufficient to generate a reasonable doubt when there is

_____

6. We will quote more fully Judge Murrah's opinion, infra.

other evidence equally important and equally persuasive. To me, such an instruction in cases of this kind places an emphasis and an importance upon character testimony which was never intended, and which the whole context of the Edgington case denies."

If there is one thing that our great body of law instructs us, it is that no piece of evidence is, or ought to be, relegated to a subordinate role. Save for reputation, no other type of evidence is considered and weighed separately from the whole, and given such impressive treatment to boot.

(5) Notwithstanding all of the above, Neely was not entitled to an "alone" or an "of itself" charge since reputation was not offered "alone" or "of itself." Defendant's opening statement, his closing argument and the testimony offered by his medical expert and himself all clearly establish that the defense did not rest on character evidence "alone." Such testimony was only incidental to his real defense: that the sheriff shot him for no reason and then engaged in a cover-up with the collusion of the police. Where a part does not rely on evidence of good reputation alone, it is clearly erroneous to deliver a charge which requires segregation and elevation of one piece of evidence and speaks as though no other evidence was offered.

## HISTORY

We believe there are only three cases in the United States Supreme Court addressing reputation testimony. Two of these, Edgington v. United States, 164 U.S. 361, 17 S.Ct. 72, 41 L.Ed. 467 (1896) and Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948) have been cited too many times to count. A third case, decided three weeks

before *Edgington, White v. United States,* 164 U.S. 100, 41 L.Ed. 365, 17 S.Ct. 38 (1896), has virtually been ignored. However, neither *Edgington* nor *Michelson,* when correctly read, supports the proposition for which they are universally cited (i.e., as standing for the proposition that an "of itself" or "standing alone" charge is required whenever reputation evidence is offered), and no amount of citations which say they do can withstand any close or critical scrutiny.

In *Edgington,* defendant was accused of making a false deposition in order to aid an allegedly fraudulent pension claim being made by his mother. Besides offering his own testimony, defendant offered reputation testimony and the trial judge gave the following instruction on this evidence:

"Some testimony has been given you touching the good character of defendant. When a man is charged with crime, the courts of the United States permit this question of good character to be introduced to go to the jury. The theory, as I view it, is a wise one. If a man, in the community where he lives, by his incoming and outgoing among his neighbors, has built up in the years of his life, be they comparatively few or many, a character among them for good morals, which includes the uprightness and excellency of our general citizenship, it is right that the jury should know that fact. It is of value to them in conflicting cases in determining points in the case; and yet, gentlemen, I have to say to you that evidence of good character is no defense against crime actually proven. If defendant in this case is proven guilty of crime charged; any good character borne by him in his community is no defense; it must not change your verdict; for the experience of mankind, of all of us, teaches us that men reputed to be of good moral character in a commu-

nity unfortunately sometimes we find they are sadly different from that which they are reputed to be, and that they are committers of crime; yet the good character goes to the jury with special force wherever the commission of the crime is doubtful. If your mind hesitates on any point as to the guilt of this defendant, then you have the right and should consider the testimony given as to his good character, and it becomes, as I have suggested, or may be of great importance in the minds of the jury in the matters of doubt." *Edgington,* 164 U.S. at 364-65. Defendant objected on the grounds that reputation evidence was not to be considered by the jury only in doubtful cases, "but should be considered by the jury in connection with all of the evidence as to whether or not on all the evidence there is a reasonable doubt." Id. at 365 (emphasis added). Mr. Justice Shiras, agreeing with defendant, held that the decided weight of authority now is that good character, when considered in connection with the other evidence in the case may generate a reasonable doubt and the well accepted practice of instructing juries as the court below did was declared improper. Henceforth, reputation evidence was not to be of evidentiary value on only doubtful or conflicting cases, but in all cases. The court then went on to observe, but in dictum only, that "[t]he circumstances may be such that an established reputation for good character, if it is relevant to the issue, would alone create a reasonable doubt, although without it the other evidence would be convincing." *Edgington,* 164 U.S. at 366. This is the unfortunate afterthought which has been seized upon as the "holding" of the case and, in turn, the case has been mistakenly interpreted as standing for the proposition that a court must charge that reputation evidence must be considered by a jury alone and apart

from all the other evidence to see if a reasonable doubt is raised. Whatever may be said about judicial ruminations and the unfortunate consequences they have caused, surely this case ranks consideration for placement in the stratosphere of judicial misinterpretations. A careful reading of "the circumstances may be such" statement leads one to the inescapable conclusion that the court was thinking in futuro, for surely in the case before them, the circumstances were not such as to leave defendant with no evidence to muster but his own reputation. Indeed, defendant took the stand in his own behalf. Moreover, the objection defendant in *Edgington* raised was the same as we raise today, i.e. that the jury should be instructed that reputation evidence be considered with all the evidence to see if a reasonable doubt arose from all the evidence.

The limited holding of *Edgington* is further made manifest by the cases the Supreme Court cited in its opinion, including one of Pennsylvania's, *Heine v. Commonwealth,* 91 Pa. 145 (1879).[7] In *Heine,* the court in its jury instructions made the same error that the trial court in *Edgington* did: i.e., the *Heine* judge stated: "If a man is guilty, his previous good character has nothing to do with the case, but if you have a doubt as to his guilt, then character steps in and aids in determining that doubt." Most important to our conclusion that *Edgington* reaffirmed that reputation evidence or, as it was called, charac-

---

7. "This is not a holding that an instruction on the effect of good character evidence 'standing alone' must be given . . . *Edgington* was striking down a limitation on the use of character evidence, not requiring that the lack of limitation must be expressly pointed out to the jury." *United States v. Winter,* 663 F.2d 1120, 1147 n.46 (1st Cir., 1981).

ter evidence, should be considered with all of the other evidence offered and not apart therefrom, is the decision handed down on November 9, 1896, 21 days before *Edgington,* in. *White v. United States,* 164 U.S. 100, 17 S. Ct. 38, 41 L.Ed. 365 (1896). In *White,* defendant was charged with submitting false and fictitious bills to a United States marshal so that he could collect witness fees for persons alleged to have been brought before a United States commissioner, when no such witnesses had been produced. At trial, defendant offered to prove his good reputation for over 20 years prior to the incident and the district attorney admitted that defendant had such a reputation. Defendant requested the trial judge to instruct the jury as follows:

"The evidence of good character, when established by the evidence in a case, taken in connection with all the other evidence, may generate a reasonable doubt of the guilt of defendant." *White,* 164 U.S. at 104. This was rejected by the judge, who instead offered the following instruction in its place:

"It is admitted in this case that defendants are men of good character, the law presuming every defendant to have a good character, and the jury may consider such good character and give it such weight as they see proper, under all the evidence in the case that defendant is entitled to a reasonable doubt." Id. The Supreme Court, with Mr. Justice Peckham writing the opinion affirming the conviction, held that the court properly instructed the jury and that the charge as given amounted in substance to that which defendant had requested.

"When the court told the jury it was admitted that defendant was a man of good character, and that the jury might consider such good character and give such weight to it as they saw proper under all the evidence in the case, and that defendant was

entitled to a reasonable doubt, it was sufficient, although the court unnecessarily added that the law presumed every defendant to have a good character." Id. at 105.

Nothing we have found indicates that the Supreme Court ever considered any aspect of reputation evidence after *Edgington,* until 1948 when *Michelson* was handed down. In *Michelson,* the issue was the proper scope of cross-examination of defendant's reputation witnesses. Michelson was accused of bribing a federal revenue agent. Michelson took the stand and on direct examination voluntarily admitted that he had been convicted 20 years earlier of a violation of the trademark law in New York City involving some wristwatches. The prosecution, in cross-examining some of defendant's reputation witnesses, was permitted to ask if they had heard that defendant had been arrested 27 years earlier for receiving stolen goods. None of these witnesses stated that they had heard of this arrest.[8] Michelson challenged the right of the prosecution to cross-examine his character witnesses on this ancient prior arrest. The court of appeals held that while the practice has been criticized, it was proper, and the Supreme Court affirmed. Mr Justice Jackson also took the opportunity provided by *Michelson* to review the history and indeed the entire subject of proof of reputation or character. In dictum, however, he made an egregious error by stating: ". . . this court has held that such testimony alone, in some circumstances, may be enough to raise a reasonable doubt of guilt and that . . . in a proper case the jury should be so instructed." *Michelson,* 335 U.S. at 476 (citing *Edgington,*

---

8. Cf. *Commonwealth v. Scott,* 496 Pa. 188, 436 A.2d 607 (1981).

supra) (emphasis added).

This error, again in dictum as in *Edgington,* relegated *White* to the jurisprudential dustbin, but secured for *Edgington* and *Michelson* a prominent place whenever reputation testimony is discussed. Indeed, these two cases are always cited together as though they were Siamese twins joined at the chest with only one heart to sustain them both. Unfortunately, the single "heart" is the proposition for which these cases are mistakenly cited: that reputation evidence, when considered "of itself," may raise a reasonable doubt and justify an acquittal. The fact that neither of these cases ever reached that holding has somehow been lost in the judicial mists for far too long. Fortunately, however, today all of the federal circuit courts of appeals have come to the realization that the emperor has no clothes on after all, and have challenged Mr. Justice Jackson's abovementioned assessment in *Michelson.*[9] Instead of considering reputation as raising "of itself" or "alone" a reasonable doubt, or worse, instructing juries they should consider reputation both alone and with all the other evidence to see if a reasonable doubt exists, these circuits have disregarded *Michelson* as well as *Edgington* or ignored them or limited them to, as yet, undeclared "certain circumstances."[10] Perhaps what summarizes our position

----

9. The D.C. Circuit has not as yet taken a position on this precise point.

10. Of intense interest to us is the fact that 91 years after *Edgington,* we still have not defined with specificity what these "certain circumstances" might be either.

See *United States v. Southard,* 700 F.2d 1 (1st Cir., 1983); *United States v. Winter,* 663 F.2d 1120, 1146-49 (1st Cir., 1981) ("standing alone" instruction disapproved in all cases); *United States v. Lowenthal,* 224 F.2d 248, 249 (2d Cir., 1955)

best is the specially concurring opinion of Judge Murrah in *Petersen v. United States*, 268 F.2d 87, 89-90 (10th Cir., 1959). This opinion became the.

---

(generally improper, but cf. *United States v. Cramer*, 447 F.2d 210, 219 (2nd Cir., 1971) (instruction should have been given, although its omission was harmless)); *United States v. Klass*, 166 F.2d 373, 378-80 (3rd Cir., 1948) (en banc) (unnecessary); *United States v. Logan*, 717 F.2d 84, 88-91 (3rd Cir., 1983) (improper, although the defendant has a right to an instruction providing effective guidance); *Mannix v. United States*, 140 F.2d 250, 253-54 (4th Cir., 1944) (improper); *United States v. Foley*, 598 F.2d 1323 (4th Cir., 1979) (improper where defendants did not rely on character evidence alone); *United States v. Callahan*, 588 F.2d 1078, 1085 (5th Cir.), cert. denied, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979); *United States v. Ruppel*, 666 F.2d 261, 272-74 (5th Cir.), cert. denied, 458 U.S.1107, 102 S.Ct. 3487, 73 L.Ed.2d 1369 (1982) (unnecessary; consider character evidence on a par with other evidence); *Poliafico v. United States*, 237 F.2d 97, 114 (6th Cir., 1956), cert. denied, 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597 (1957) (unnecessary; consider character evidence on a par with other evidence); *United States v. Brown*, 353 F.2d 938, 940 (6th Cir., 1965); *United States v. Burke*, 781 F.2d 1234 (7th Cir., 1985); *United States v. Marquardt*, 786 F.2d 771 (7th Cir., 1986) (consider character evidence on a par with other evidence except where it is the only evidence offered); *Black v. United States*, 309 F.2d 331, 343-44 (8th Cir., 1962), cert. denied, 372 U.S. 934, 83 S.Ct. 880, 9 L.Ed.2d 765 (1963) (disapproved in all cases); *Carbo v. United States*, 314 F.2d 718, 746 (9th Cir., 1963), cert. denied, 377 U.S. 953, 84 S.Ct. 1626, 12 L.Ed.2d 498 (1964) (unnecessary); *Oertle v. United States*, 370 F.2d 719, 727 (10th Cir., 1966), cert. denied, 387 U.S. 943, 87 S.Ct 2075, 18 L.Ed.2d 1329 (1967); *United States v. McMurray*, 656 F.2d 540, 550-551 (10th Cir., 1980) (unnecessary where defendant does not rely on character evidence alone); *United States v. Borders*, 693 F.2d 1318, 1328-30 (11th Cir., 1982), cert, denied, 461 U.S. 905, 103 S.Ct. 1875, 76 L.Ed.2d 807 (1983) (unnecessary; consider character evidence on a par with other evidence); *Smith v. United States*, 305 F.2d 197 (9th Cir., 1962) unnecessary except in special circumstances).

basis for the 10th Circuit's opinion four years' later when it rejected Petersen's holding in *Oertle v. United States,* 370 F.2d 719 (10th Cir., 1966):

"I agree with the trial court and with the many cases from most of the circuits which say that evidence of good character is admissible and should be considered together with other probative evidence as tending to create a reasonable doubt of guilt or, if you please, to augment the presumption of innocence; that the verdict should rest upon 'the whole of the evidence' without emphasis on any particular testimony. To me any other instruction tends to confuse rather than clarify the purposes for which good character testimony is admitted and is to be considered by the jury.

"It is my firm conviction that the requested instruction, based as it was on the *Edgington* case, is a lifeless and doctrinaire interpretation of what was said in that case, and has the effect of distorting its wholesome philosophy. I agree with Judge Grubb in *Le More v. United States,* 5th Cir., 253 F. 887; and Judge Hand in *Nash v. United States,* 2nd Cir., 54 F.2d 1006, that nothing said in the *Edgington* case with reference to good character evidence was intended to announce a rule that good character evidence should be emphasized over other defense evidence. See *Kreiner v. United States,* 2nd Cir., 11 F.2d 722. As Judge Hand said in *Nash v. United States,* supra [54 F.2d 1007]: 'Evidence of good character is to be used like any other . . . and the less they [jury] are told about the grounds for its admission or what they shall do with it, the more likely they are to use it sensibly.'

"Evidence of good character may, however, when standing alone, in and of itself create a reasonable doubt of guilt, and that where it does stand alone, the jury should be so instructed. Such seems to me

to be the interpretation placed upon *Edgington* by the dicta in *Michelson* and it is practical, understandable and sensible. But I am unable to find any good reason for telling a jury that good character alone may be sufficient to generate a reasonable doubt when there is other evidence equally important and equally persuasive. To me, such an instruction in cases of this kind places an emphasis and an importance upon character testimony which was never intended, and which the whole context of the *Edgington* case denies.

"Indeed, what do we mean when we tell the jury that 'good character, when considered with all other evidence, may alone create a reasonable doubt'? I don't know what it means, and no one has assayed to explain it. Surely it does not mean that the jury may ignore the other evidence and base its judgment alone upon good character. If it is to be considered with all other evidence, how can it alone be said to create a reasonable doubt? Such refinements are incomprehensible to me, and being so, I cannot expect a lay jury to understand and apply it as the law of the case when considering guilt or innocence. This legalistic nicety violates the common law and constitutional function of the courts to instruct juries on the law of the case in language they can understand and apply as laymen unlearned in the law. It reduces the law to an abstract absurdity, and exposes us to the public charge of subverting the law to our own fanciful ends." *Petersen,* 268 F.2d at 89-90.

Just why Pennsylvania seems to have been permanently lost in this evidentiary thicket is a mystery to me. Why we have been trying to bind an unwilling judiciary to making ritualistic incantations to juries which make no sense at all is equally puzzling.

We owe a duty to our citizens, as well as our system, to reject once and for all the unrealistic and unjust notion that because a defendant has had an impeccable prior good reputation, that alone is sufficient to absolve him from guilt when he puts his own credibility or a defense before a jury. When an accused elects not to testify himself or offer any witnesses except those as to relevant traits of good character, we believe that an appropriate instruction to the jury can be fashioned that a reasonable doubt may exist when they consider all of the testimony together, including defendant's prior good reputation and, if such a reasonable doubt exists, the jury must acquit the accused. Absent from such an instruction should be the word "alone." We also believe that when defendant offers good reputation, if the jury finds this as a fact, it should be considered together with all of the other factual evidence to see if a reasonable doubt exists. Reputation evidence may be effectively used for other purposes: i.e., defendant's reputation evidence may also be used "to help evaluate the credibility of defendant's testimony and to help evaluate the credibility of the innocent explanation he offers for his acts. In a close case these considerations may tilt the balance. Reputation evidence thus may create a reasonable doubt. Yet any bit of evidence may have this effect. There is no reason to tell the jury that reputation evidence has some special ability to create a reasonable doubt; it does not." *United States v. Burke,* 781 F.2d at 1420.